**RESERVE INTERNATIONAL LIQUIDITY FUND, LTD.,** Interpleader Plaintiff,

v.

**CAXTON INTERNATIONAL LIMITED, Verisign Sarl, et al., Defendants.**

No. 09 Civ. 9021(PGG).

United States District Court, S.D. New York.

June 23, 2010.

Karen S. Frieman and David S. Tannenbaum, Stern Tannenbaum & Bell LLP, New York, NY, for Interpleader Plaintiff.

Mark Paul Ressler, Michael Andrew Hanin, Kasowitz, Benson, Torres & Friedman, LLP, New York, NY, Thomas K. Cauley, Martin Brandon Jackson, Nicholas Kord Lagemann, Thomas Andrew Paskowitz, Sidley Austin, LLP, New York, NY, for Defendants.

Brian H. Polovoy, Shearman & Sterling LLP, New York, NY, for Non-Party Societe Generale.

## ORDER

PAUL G. GARDEPHE, District Judge:

Interpleader Plaintiff the Reserve International Liquidity Fund has filed a petition

seeking an injunction pursuant to the All Writs Act, 28 U.S.C. § 1651, directing non-party Société Générale ("SG") to deposit in this Court's registry $10 million held by SG as a result of an overnight deposit made by the Fund in the Bank's Cayman Islands branch.

For the reasons set forth below, the Fund's petition will be DENIED.

### BACKGROUND

This action arises from the unprecedented collapse of the Reserve Funds, including the Reserve International Liquidity Fund. The Fund filed this interpleader action on October 27, 2009 in order to resolve adverse claims to the remaining assets of the Fund and to bring about a final distribution of those assets.[1]

On January 18, 2010—while the Fund's application to proceed with this interpleader action was *sub judice*—Justice Edward Bannister QC of the Commercial Division of the British Virgin Islands Eastern Caribbean Supreme Court appointed Nicholas Carter and David A.K. Walker of Price Waterhouse Coopers (the "Liquidators") as liquidators of the Fund, which is organized under the British Virgin Islands Business Companies Act of 2004. *See Western Union Int'l Ltd. v. Reserve Int'l Liquidity Fund Ltd.*, BVIHCV 2009/322, Judgment, 2010: 18 January; 26 January.

On January 20, 2010, the Liquidators requested a stay of this action while they undertook to "inform themselves and formally take a position" as to whether or not this action should continue. *See Reserve Int'l Liquidity Fund, Ltd.*, 2010 WL 1779282, at *3. The Liquidators asserted that under the BVI Insolvency Act of 2003, they had "displaced the Fund's board of directors" and "now direct and control the Fund" and, as a result, this interpleader action. *Id.* The Fund opposed the Liquidators' request for a stay and contended that the appointment of the Liquidators had no legal effect in the United States. *Id.* at *4. In an April 28, 2010 Memorandum Opinion and Order, this Court held that the Liquidators do not have standing in this action and that the exercise of interpleader jurisdiction is appropriate in this case to resolve claims to the Fund's remaining assets. *Reserve Int'l Liquidity Fund, Ltd.*, 2010 WL 1779282.

On February 11, 2010—before this Court granted the Fund's application to proceed with the instant interpleader action—Reserve Management Company, Inc. ("RMCI"), the manager of the Fund's assets, invested $10 million on behalf of the Fund in an overnight time deposit with SG's Cayman Islands branch. (Birch Decl. ¶ 13) The deposit, together with any interest earned, was to mature on February 12, 2010, when it was to be returned to State Street Bank and Trust Company, the Fund's custodian. (Birch Decl. ¶ 14, Ex. A)

The deposit was not returned on February 12, 2010. (Birch Decl. ¶ 15) In a letter dated February 10, 2010, the Liquidators requested that SG freeze the $10 million deposit and any other accounts held on behalf of the Fund on the books of SG's Cayman Islands branch. (June 1, 2010 Polovoy Decl., Ex. A ¶ 9) In response to this letter, SG froze all funds it held belonging to the Fund and placed those funds in a suspense account. (June 10, 2010 Polovoy Decl., Ex. A ¶¶ 11–13)

On March 29, 2010, RMCI filed suit against SG in the Grand Court of the Cayman Islands, Financial Services Divi-

---

**1.** This Court presumes familiarity with the underlying facts of this action, which are set forth in greater detail in *Reserve Int'l Liquidi-ty Fund. Ltd. v. Caxton Int'l Ltd.*, No. 09 Civ. 9021(PGG), 2010 WL 1779282, at *2–3 (S.D.N.Y. April 28, 2010).

sion. (June 1, 2010 Polovoy Decl., Ex. D) In that action, RMCI alleges that SG "wrongfully and in breach of the Overnight Time Deposit . . . failed to return the Funds to the Custodian" and seeks payment of $10 million as well as interests and costs. (*Id.*)

Three days later—on April 1, 2010—Justice Andrew J. Jones QC of the Grand Court of the Cayman Islands, Financial Services Division, issued an order in *The Matter of the Reserve International Liquidity Fund,* No. FSD 70 of 2010(AJJ), a liquidation proceeding brought against the Fund. In the order, the court recognized the Liquidators as "the only persons authorized to act for and on behalf of Reserve International Liquidity Fund, Ltd. (In Liquidation) for all purposes and as against all persons in the Cayman Islands." (June 1, 2010 Polovoy Decl., Ex. E)

On April 12, 2010—with its Cayman Islands suit against SG still pending—RMCI filed a third party complaint against SG in *Caxton International Ltd. v. Reserve International Liquidity Fund, Ltd.,* Index No. 08/602875, a case pending before Justice Kapnick of the New York Supreme Court, New York County. (June 1, 2010 Polovoy Decl., Ex. F; Birch Decl. ¶ 18) The Fund joined in this third party action. (Birch Decl. ¶ 18) RMCI and the Fund moved for a preliminary injunction and a temporary restraining order preventing SG from transferring the $10 million at issue to any party other than State Street. (*Id.*) On April 15, 2010, Justice Kapnick denied the request for a temporary restraining order but set a hearing on the application for a preliminary injunction. (Birch Decl. ¶ 21)

On April 13, 2010, the Cayman Islands court denied RMCI's claim against SG and directed the Bank to pay the $10 million "standing to the credit of the Fund in account number 3617600A90 operated by Société Générale" "in accordance with the direction of the Joint Official Liquidators." (Birch Decl., Ex. B) RMCI has appealed this decision. (Birch Decl. ¶ 25)

In making their April 2010 rulings, the Cayman Islands and New York courts relied on an affidavit from Governor Tipton, managing director and deputy general counsel for the Americas Region of SG. (Birch Decl. ¶¶ 22, 24, 25; Frieman Aff., Ex. A) In this affidavit, Tipton stated that SG's Cayman Islands Branch held a suspense account number 3617600A90 in the name of the Fund, and that that account contained $10,000,022.22. (Frieman Aff., Ex. A) SG subsequently submitted a second affidavit from Governor Tipton, however, in which he avers that while the $10 million at issue was "initially deposited on the books of SocGen's Cayman Islands branch," after the bank received the Liquidators' freeze request, "the funds were transferred to a 'suspense account' in order to implement the freeze," and "[t]his 'suspense account' was on the books of SocGen's New York branch. . . . The funds remain in that account on the books of the New York branch today." (June 1, 2010 Polovoy Decl., Ex. A ¶ 2)

On April 16, 2010, on the basis of the second Tipton affidavit, Justice Kapnick granted RMCI and the Fund's request for a temporary restraining order enjoining SG from transferring the $10 million at issue. (Birch Decl. ¶ 32) This order remains in effect pending a hearing on the application for a preliminary injunction, currently scheduled for June 24, 2010. (June 9, 2010 Société Générale Ltr.)

On May 28, 2010, Justice Jones of the Cayman Islands court issued an order amending his April 13, 2010 order to make clear that he was directing SG to pay the $10 million at issue to the Liquidators regardless of any intra-bank transfers of

the money made by SG. (June 15, 2010 Polovoy Decl., Ex. F)

The Fund filed the instant petition on May 25, 2010. On May 26, 2010, this Court directed SG to show cause as to why an order should not be issued directing it to deposit the $10 million at issue, plus accrued interest, in this Court's registry. (Dkt. No. 81) This Court conducted a hearing on this matter on June 1, 2010.

## DISCUSSION

### I. THIS COURT LACKS JURISDICTION TO GRANT THE REQUESTED INJUNCTIVE RELIEF

■ The All Writs Act provides that courts may "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act "empowers federal courts to fashion extraordinary remedies when the need arises," *Pennsylvania Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985), by authorizing a federal court " 'to issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.' " *Sprint Spectrum L.P. v. Mills*, 283 F.3d 404, 413 (2d Cir.2002) (quoting *Pennsylvania Bureau of Corr.*, 474 U.S. at 43, 106 S.Ct. 355 (quoting *United States v. New York Tel. Co.*, 434 U.S. 159, 172, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977))).

■ "[T]he All Writs Act does not confer jurisdiction on the federal courts [, however]." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002). "Instead, it limits a court to 'issuing process in aid of its existing statutory jurisdiction; the Act does not enlarge that jurisdiction.' " *Achtman v.*

*Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 333–34 (2d Cir.2006) (quoting *Clinton v. Goldsmith*, 526 U.S. 529, 534–35, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999) (quoting § 28 U.S.C. 1651(a))). Accordingly, the All Writs Act "cannot be used to allow a court to deal 'with a matter lying wholly outside the issues in the suit.' " *United States v. Prof'l Air Traffic Controllers Org.*, 438 F.2d 79, 81–82 (2d Cir.1970) (quoting *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945)).

### A. Statutory Interpleader Jurisdiction

This Court's jurisdiction is founded on 28 U.S.C. § 1335, which grants district courts original jurisdiction over interpleader actions in which the amount at stake is $500 or more, and the action presents two or more adverse claimants, of diverse citizenship, who are claiming or may claim to be entitled to the money or property at issue. *See Reserve Int'l Liquidity Fund*, 2010 WL 1779282, at *6–11.

The Fund claims that this Court's jurisdiction over the underlying interpleader action is sufficient to support the exercise of jurisdiction over the Fund's application for an All Writs Act injunction. (Fund Supp. Br. 5–8) The Fund's argument is that such an injunction is "necessary or appropriate in aid of" this Court's exercise of its jurisdiction under 28 U.S.C. § 1335. *See* 28 U.S.C. § 1651(a).

■ In so arguing, the Fund misapprehends the nature of this Court's interpleader jurisdiction. Statutory interpleader provides for jurisdiction over actions "filed by any person, firm, or corporation, association, or society having *in his or its custody or possession* money or property...." 28 U.S.C. § 1335(a) (emphasis added). Indeed, when this Court held that the Fund's Amended Complaint met the

requirements of statutory interpleader, it directed that the Fund "should deposit all Fund assets *within its control* in this Court's registry...." *Reserve Int'l Liquidity Fund,* 2010 WL 1779282, at *15 (emphasis added).

■ Interpleader is designed to " 'insulate a stakeholder from contradictory judgments and multiple liability and ... relieve a stakeholder from having to determine which claim among several is meritorious.' " *Weininger v. Castro,* 462 F.Supp.2d 457, 500 (S.D.N.Y.2006) (quoting *John v. Sotheby's, Inc.,* 141 F.R.D. 29, 33 (S.D.N.Y. 1992)). As this Court has previously held, "[t]he Fund cannot both distribute its assets on a *pro rata* basis and a FIFO [or first in, first out] basis. One method of distribution must be selected. If interpleader is not granted, the Fund could face conflicting judgments involving different interpretations of the same contract language, resulting in court orders to apply distribution schemes that are entirely inconsistent." *Reserve Int'l Liquidity Fund,* 2010 WL 1779282, at *10.

Here, however, the Fund seeks more than guidance as to how to distribute funds among adverse claimants. It seeks to have this Court order an injunction that would resolve in the Fund's favor a dispute about control over the $10 million overnight deposit. The Fund's petition thus goes well beyond the purposes of statutory interpleader. While, as a result of this interpleader action, this Court has jurisdiction over the distribution of assets in the Fund's control, assisting the Fund in marshalling additional assets does not fall within the scope of that charge.

Indeed, Fund counsel acknowledged as much before Justice Kapnick. During a hearing concerning the Fund's third party complaint against SG, Justice Kapnick asked whether the claims asserted in that case might not better be raised in the action before this Court. (June 15, 2010 Polovoy Decl., Ex. K at 13) Fund counsel rejected that suggestion, explaining that

> the relief that's sought in the interpleader action brought by the [F]und in the [f]ederal court before Judge Gardephe and the unopposed application for an interpleader by State Street is for the Court to grant permission for there to be an interpleader action, for money to be deposited in the Court registry. That money is the money that's presently in the possession of State Street which includes these securities underlying these proceeds. But we also need to get the proceeds. We need to get the proceeds to be able to put them into the court registry when Judge Gardephe rules, we are assuming and presuming, in our favor.

> So the way I would ideally see, that that is not an application before Judge Gardephe to get the funds. That's just a motion to state interpleader action and have a place for the funds to be deposited.

(June 15, 2010 Polovoy Decl., Ex. K at 13–14)

The Fund has not cited any legal authority suggesting that the All Writs Act may be utilized to assist an interpleader plaintiff in bringing assets within its control. *Sprint Spectrum L.P. v. Mills,* 283 F.3d 404 (2d Cir.2002), the primary authority relied on by the Fund (Fund Supp. Br. 5), is not an interpleader action and is not otherwise on point.

In *Sprint Spectrum L.P.,* Sprint brought claims against New York Department of Education officials seeking, *inter alia,* an order directing these officials to approve Sprint's application to build a cell tower on the grounds of Ossining High School, as Sprint had contracted with the Ossining Union Free School District to do. *Sprint*

*Spectrum L.P.*, 283 F.3d at 406–08. The district court ruled in Sprint's favor and ordered the officials "'to issue the required permits allowing Sprint to install at the Ossining High School a telecommunications facility in the form of a flagpole.'" *Id.* at 410 (quoting *Sprint Spectrum L.P. v. Mills*, 65 F.Supp.2d 148, 159 (1999)). When the School District refused to permit Sprint to install the cell tower, Sprint obtained an injunction directing the District to allow the installation. *Sprint Spectrum L.P.*, 283 F.3d at 411–12. The Second Circuit affirmed the district court's exercise of jurisdiction over Sprint's request for an All Writs Act injunction on the grounds that the

court indisputably had jurisdiction over Sprint's Telecommunications Act claims against DOE in *Sprint I*. The School District, though not a party to that action, was integrally involved because there would have been no controversy between Sprint and DOE if the District had not granted to Sprint the right to erect and maintain an antenna on the High School.... Having determined in *Sprint I*, in light of these federal policies, that DOE's actions impeding the School District's performance of its contractual obligations under the Lease violated the Telecommunications Act and should be promptly enjoined, the district court did not abuse its discretion in concluding that the swift exercise of ancillary jurisdiction over the School District—without whose entry into the

Lease there would have been no *Sprint I*—was appropriate.

*Sprint Spectrum L.P.*, 283 F.3d at 414.

*Sprint Spectrum* is easily distinguished from this case. The School District—although not a party—was an integral player in the underlying action, and the injunction issued against the School District was necessary to effectuate the district court's direction that Sprint Spectrum be permitted to build the cell tower. *See id.* Here, SG is not an integral player in the underlying interpleader action, which involves claims to the Fund's assets following its 2008 collapse. Indeed, this application relates to a Fund overnight deposit that took place more than a year after the 2008 collapse of the Fund. While in this Court's view investors would benefit if the $10 million currently held by SG were returned to the Fund, the return of these monies is not necessary to effectuate a distribution of assets within the Fund's control.

The purpose of interpleader is, as noted above, to protect a stakeholder from contradictory judgments and multiple liability arising from adverse and irreconcilable claims to assets under the control of the interpleader plaintiff. It is thus essentially defensive in nature. The Fund here proposes to use interpleader as a sword—*i.e.*, as a device to resolve in its favor ongoing lawsuits it has initiated in the Grand Court of the Cayman Islands and in Supreme Court, New York County, to obtain control over the $10 million in Fund assets held by SG.[2] The Fund has cited no

---

**2.** While the Fund characterizes its filing of the Cayman Islands action as defensive (Fund Supp. Br. 15 n. 5), the fact remains that the Cayman Islands litigation concerns control over the same $10 million at issue here. Similarly, while the Fund argues that the relief it seeks in the New York state action would only prevent SG from transferring the $10 million, rather than compelling SG to return those funds to State Street (*id.*), the Fund's New

York third party complaint seeks specific performance and "an order requiring the Banks immediately to return those proceeds to the custodian of the Fund, State Street, where they will be maintained pending the final determination of the main action or the further order of this Court." (Polovoy Deck, Ex. F ¶ 33) Thus, the purpose of the Fund's Cayman Islands lawsuit, the New York state action, and the instant petition seeking an All Writs

cases suggesting, however, that the interpleader statute and the All Writs Act may be utilized as an all-purpose tool to resolve—in the interpleader plaintiff's favor—any ongoing disputes concerning assets outside the control of the interpleader plaintiff. Indeed, the Supreme Court has noted that interpleader was "never intended ... to be an all-purpose 'bill of peace'" used to resolve claims in multi-party litigation, *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 535–36, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967), and at least one court in this district has expressly rejected an attempt to use the interpleader statute to obtain control of the property at issue. *See J.B.I. Indus., Inc. v. Suchde*, No. 99 Civ. 12435(AGS), 2000 WL 1174997, at *15 n. 18 (S.D.N.Y. Aug. 17, 2000) ("[T]this action was filed because plaintiff is *not* in possession or custody of the [property] or [its] monetary equivalent, but rather seeks to gain such possession. Consequently, plaintiff fails to satisfy the 'possession' requirement for statutory interpleader. Accordingly, even were the Court to find that adverse claims exist, plaintiff's motion for interpleader would be denied.") (emphasis in the original) (internal citations omitted).

The Supreme Court has also made clear that "[t]he All Writs Act invests a court with a power essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law." *Clinton*, 526 U.S. at 537, 119 S.Ct. 1538. Here, the Fund is actively pursuing its legal remedies in both Supreme Court, New York County, and in the Cayman

Islands, and there has been no showing that the Fund's rights cannot be vindicated in these venues.

For all these reasons, this Court is without jurisdiction to grant the relief requested by the Fund, and the petition for an All Writs Act injunction will be denied.[3]

## B. *Supplemental Jurisdiction*

The Fund also contends that this Court may exercise supplemental jurisdiction over its petition pursuant to 28 U.S.C. § 1367(a). (Fund Supp. Br. 7–10) Section 1367(a) provides that

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

■ The Fund's application for an injunction does not fall within the boundaries of supplemental jurisdiction articulated in 28 U.S.C. § 1367(a) because SG is not a party to this case and thus no claims have been asserted against it. *See* 28 U.S.C. § 1367(a); *In re Baycol Prods. Litig.*, No. MDL 1431(MJD), 2004 WL 1058105, at *4 (D.Minn. May 3, 2004) ("The Court concludes that it does not have supplemental

Act injunction is in each instance the same: to return to the Fund's control the $10 million overnight time deposit.

**3.** In support of its petition for an injunction, the Fund argues that courts commonly exercise jurisdiction over actions initiated by court-appointed receivers against third parties. (Fund Supp. Br. 9–10) The exercise of

jurisdiction over such actions, however, is "attributed to the jurisdiction on which the main suit rested." *See United States v. Franklin Nat'l Bank*, 512 F.2d 245, 249 (2d Cir. 1975). Here, as discussed above, this interpleader action does not provide an adequate jurisdictional basis for this Court to grant the injunctive relief the Fund seeks.

jurisdiction over non-party TPPs. Supplemental jurisdiction under § 1367(a) applies only to 'claims.' There can be no jurisdiction where there is no claim. To establish jurisdiction, Plaintiffs must take formal steps to bring third parties under the Court's jurisdiction.") (internal citations omitted). The Fund has not cited any legal authority for the proposition that supplemental jurisdiction may be exercised over non-parties.[4]

### CONCLUSION

For the foregoing reasons, the Fund's petition for an All Writs Act injunction against non-party Société Générale is DENIED. The Clerk of the Court is directed to terminate the motion: Docket No. 83.

SO ORDERED.

---

4. The Fund notes that 28 U.S.C. § 1367(a) provides for the exercise of jurisdiction over pendent parties (Fund Supp. Br. 8). SG is not a pendent party here, however, because no claim has been asserted against it in this action. *See Black's Law Dictionary* 930 (9th ed. 2009) (defining "pendent party jurisdiction" as "[a] court's jurisdiction to adjudicate a claim against a party who is not otherwise subject to the court's jurisdiction, because the claim by or against that party arises from the same transaction or occurrence as another claim that is properly before the court.").