UNITED STATES, Appellee

v.

Mark K. ARNESS, Lieutenant Colonel
U.S. Air Force, Appellant

No. 14-8014

Misc. Dkt. No. 2013-30

United States Court of Appeals for the Armed Forces

Argued February 10, 2015

Decided August 19, 2015

STUCKY, J., delivered the opinion of the Court, in which
ERDMANN, C.J., and RYAN and OHLSON, JJ., joined.  BAKER, J.,
filed a separate opinion concurring in the result.


Counsel


For Appellant:  Captain Michael A. Schrama (argued); Captain
Johnathan D. Legg (on brief).


For Appellee:  Gerald R. Bruce, Esq. (argued).


Military Judge:  Don M. Christensen


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Arness, No. 14-8014/AF

Judge STUCKY delivered the opinion of the Court.

Appellant's approved sentence was less than the statutory minimum required to trigger direct review by the United States Air Force Court of Criminal Appeals (CCA). Nevertheless, the CCA concluded that it had jurisdiction to consider Appellant's petition for a writ of error coram nobis. The CCA denied Appellant any relief, however, and he filed a writ-appeal at this Court. We specified an issue: whether the CCA had jurisdiction to entertain the writ petition. We hold that the CCA was without jurisdiction to consider Appellant's case, and we dismiss the writ-appeal.

## I. Background

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of fourteen specifications of going from or absenting himself from his place of duty; ten specifications of false official statements; and two specifications of conduct unbecoming an officer by submitting a memorandum he knew to be fabricated to both the Air Force Board for Correction of Military Records and the Secretary of the Air Force. Articles 86, 107 and 133, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 907, 933 (2012). The convening authority approved the adjudged sentence: confinement for eleven

months and a reprimand. After reviewing Appellant's case under Article 69(a), UCMJ, 10 U.S.C. § 869(a) (2012), the Judge Advocate General determined that the findings and sentence were supported in law, and elected not to send the case to the CCA for review under Article 69(d). Thereafter, Appellant asked the Judge Advocate General to reconsider his decision, alleging that certain errors were committed in his court-martial. The Judge Advocate General denied reconsideration on the basis that Appellant's conviction and sentence were final under Article 76, UCMJ, 10 U.S.C. § 876 (2012).

Appellant filed a petition for extraordinary relief in the nature of a writ of error coram nobis at the CCA. The CCA determined that it had jurisdiction to consider the petition, and that the "requested writ [was] 'necessary or appropriate,' as there [were] no adequate alternative remedies available to the petitioner," but held that the petitioner was not entitled to relief on the merits. United States v. Arness, No. 2013-30, 2014 CCA LEXIS 160, at *6, 2014 WL 1309825, at *2, *3 (A.F. Ct. Crim. App. Mar. 11, 2014) (unpublished).

Appellant filed a pro se writ-appeal at this Court. We specified the jurisdiction issue and ordered the Judge Advocate General of the Air Force to appoint counsel to

represent Appellant.  <u>United States v. Arness</u>, 73 M.J. 454
(C.A.A.F. 2014) (order).

## II.  Discussion

The courts of criminal appeals are courts of limited
jurisdiction, defined entirely by statute.  See <u>United States v.
Politte</u>, 63 M.J. 24, 25 (C.A.A.F. 2006).  Relevant to this
appeal, this limited jurisdiction is spelled out in two
statutes:  Articles 66 and 69, UCMJ, 10 U.S.C. §§ 866, 869
(2012).

The first provision requires the CCA to review the record in
each trial by court-martial "in which the sentence, as approved,
extends to death, dismissal of a commissioned officer, cadet, or
midshipman, dishonorable or bad-conduct discharge, or
confinement for one year or more."[1]  Article 66(b)(1), UCMJ.
General court-martial cases not meeting the minimum requirements
of Article 66(b)(1) must be reviewed in the office of the Judge
Advocate General, absent an accused's waiving or withdrawing
from appellate review.  Article 69(a), UCMJ.  "If any part of
the findings or sentence is found to be unsupported in law or if
reassessment of the sentence is appropriate, the Judge Advocate
General may modify or set aside the findings or sentence or
both."  Article 69(a), UCMJ.  Under limited circumstances, the

---

[1] Unless it is a capital case, an accused may waive appellate
review.  Article 66(b)(2), UCMJ.

Judge Advocate General may also modify or set aside the findings or sentence of cases not reviewed under Article 66 or Article 69. See Article 64, UCMJ, 10 U.S.C. § 864 (2012).

The second provision affecting a CCA's jurisdiction provides that it may also review:

    (1)  any court-martial case which

        (A)  is subject to action by the Judge Advocate General under this section [§ 869], and

        (B)  is sent to the Court of Criminal Appeals by order of the Judge Advocate General; and

    (2)  any action taken by the Judge Advocate General under this section in such case.

Article 69(d), UCMJ. Review in such cases is limited to matters of law, unlike the CCA's normal review under Article 66(c). See Article 69(e), UCMJ.

Here the CCA recognized that Appellant's sentence did not entitle him to direct review under Article 66. Arness, 2014 CCA LEXIS 160, at *6, 2014 WL 1309825, at *2. The CCA reasoned, however, that it had jurisdiction to consider Appellant's writ petition because the Judge Advocate General could have sent the case to the CCA for review, and because "Article 69(d)(2), UCMJ, authorizes [the CCA] to review 'any action taken by the Judge Advocate General under this section' in a court-martial.'" Id., 2014 WL 1309825, at *2. The CCA concluded that, because it "could have properly reviewed the original proceeding under

Article 69, UCMJ . . . [it] retains authority to issue extraordinary writs in cases reviewed under Article 69, UCMJ." Id., 2014 WL 1309825, at *2.

In arriving at this conclusion, the CCA relied heavily upon a case in which the United States Army Court of Criminal Appeals came to a similar conclusion as to its jurisdiction. Dew v. United States, 48 M.J. 639, 646 (A. Ct. Crim. App. 1998). In turn, Dew relied on two decisions in which we found jurisdiction under the All Writs Act, 18 U.S.C. § 1651(a) (2012), to entertain petitions for extraordinary relief where the sentence was less than that required for review before the service courts. These were Unger v. Ziemniak, 27 M.J. 349, 351–55 (C.M.A. 1989); and McPhail v. United States, 1 M.J. 457, 462–63 (C.M.A. 1976).

In Unger, we relied on our earlier decision in McPhail. McPhail is distinguishable from the present case in that it involved a fundamental problem of jurisdiction not present here. Of greater importance is that the expansive concepts of remedial jurisdiction which underlay McPhail and, in particular, Unger were later seriously undermined by the Supreme Court's decision in Clinton v. Goldsmith, 526 U.S. 529 (1999). We need not consider here what Goldsmith may say with regard to our own appellate jurisdiction; it is enough to state that we repudiate the expansive approach taken in McPhail, Unger, and Dew. To the

6

extent they are inconsistent with our opinion in this case,

McPhail and Unger are overruled.

The CCA having been limited to the jurisdiction granted it by Article 69(d), the analysis is straightforward.  Here, the CCA misread Article 69 and, in doing so, its own jurisdiction. Consideration of extraordinary relief is not "in aid" of the CCA's jurisdiction, because the CCA had none in the first place. The statute does not authorize the CCA to review every case which is subject to action by the Judge Advocate General pursuant to Article 69.  Instead, it grants the CCA authority to review any action taken by the Judge Advocate General "under this section in such case" -- a case that the Judge Advocate General elects to refer to the CCA.  Article 69(d)(2), UCMJ (emphasis added).  As the Judge Advocate General did not refer Appellant's case to the CCA -- a statutory prerequisite for its review -- the CCA was without jurisdiction to review it.  As this Court's jurisdiction is predicated on the jurisdiction of the CCA, we are without jurisdiction to hear the writ-appeal. See Article 67, UCMJ, 10 U.S.C. § 867 (2012).

### III.  Judgment

The judgment of the United States Air Force Court of Criminal Appeals is vacated.  Appellant's writ-appeal is dismissed for lack of jurisdiction.

United States v. Arness, No. 14-8014/AF

BAKER, Judge* (concurring in the result):

There are usually two sides to every story, or case. Where Article 69, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 869 (2012), is concerned, the statutory language is not as unambiguous as portrayed by the majority opinion. As explained below, multiple interpretations are available. However, under any plausible interpretation, the Government has not established jurisdiction. Therefore, I concur in the result.

In Goldsmith, this Court went too far and asserted jurisdiction over what was clearly an administrative matter. Goldsmith v. Clinton, 48 M.J. 84, 87–90 (C.A.A.F. 1998) rev'd, 526 U.S. 529 (1999), vacated, 52 M.J. 415 (C.A.A.F. 1999). The connection to court-martial jurisdiction was tenuous at best. The Supreme Court concluded as much and reversed. Clinton v. Goldsmith, 526 U.S. 529, 534–36 (1999). However, in recent years this Court has swung too far in the other direction and neither asserted nor defended its jurisdiction or the jurisdiction of military appeals courts to hear appeals. See Ctr. for Constitutional Rights v. United States, 72 M.J. 126, 130 (C.A.A.F. 2013); United States v. Rodriguez, 67 M.J. 110, 116 (C.A.A.F. 2009); United States v. Rorie, 58 M.J. 399, 405–07 (C.A.A.F. 2003). Where this Court has found jurisdiction it has

---

* Former Chief Judge James E. Baker took final action in this case prior to the expiration of his term on July 31, 2015.

done so by the narrowest of margins. LRM v. Kastenberg, 72 M.J. 364, 368 (C.A.A.F. 2013); United States v. Denedo, 66 M.J. 114, 125 (C.A.A.F. 2008), aff'd and remanded, 556 U.S. 904, 913-15 (2009). Therefore, if the President and the Congress believe that judicial appellate review is important, if not essential, to a uniform and credible military justice system, or that civilian judicial oversight upholds an important constitutional principle, I would urge the Congress and the President to consider where and how to clarify and express judicial appellate jurisdiction over courts-martial. Likewise, I would urge the President and the Congress to clarify the appellate jurisdiction of the courts of criminal appeals (CCAs) with respect to Article 69, UCMJ, and to do so conscious of how this article has been applied, or more to the point, not applied.

A. Article 69, UCMJ, Applied to this Case

In this case, the parties agree on three points. First, the All Writs Act, 18 U.S.C. § 1651(a) (2012), applies to the CCAs. Second, the act can only be used in aid of jurisdiction that already exists; it does not create or expand jurisdiction. Third, however useful it might be, the courts of criminal appeals and this Court do not have supervisory authority over courts-martial or military justice, outside the context of hearing appeals.

<u>United States v. Arness</u>, No. 14-8014/AF

The United States Air Force Court of Criminal Appeals
determined that Appellant was not entitled to Article 66, UCMJ,
10 U.S.C. § 866 (2012), review because his sentence was sub-
jurisdictional in nature.  He was not sentenced to one year or
more of confinement and did not receive a punitive discharge.
Nonetheless, the court determined that review of Appellant's
motion for a writ in this case was in aid of its existing
jurisdiction, on the basis of three considerations.  First, the
Judge Advocate General (TJAG) could have referred the case,
meaning that the CCA could potentially have reviewed it.
Second, in the view of the lower court, Article 69(d)(2), UCMJ,
"authorizes this court to review 'any action taken by the Judge
Advocate General under this section' in a court-martial."
Third, the court drew support from <u>Dew v. United States</u>, 48 M.J.
639, 645 (A. Ct. Crim. App. 1998), which found that, "[a]s the
highest judicial tribunal" in each service's court-martial
system, the CCAs "are expected to fulfill an appropriate
supervisory function over the administration of military
justice," <u>id.</u>, which is sufficient basis to resolve
extraordinary writs.  <u>United States v. Arness</u>, Misc. Dkt. No.
2013-30, 2014 CCA LEXIS 160, at *6, 2014 WL 1309825, at *2-*3
(A.F. Ct. Crim. App. Mar. 11, 2014) (unpublished).

The reasoning is succinct and ultimately not persuasive,
especially because the TJAG did not refer the case to the CCA as

3

provided for in subsection (d)(1) of Article 69, UCMJ. Neither did he take action on the case, as referenced (according to some interpretations) in subsection (d)(2). Nevertheless, I differ with the majority opinion's analysis in reaching this conclusion.

Article 69, UCMJ, states:

(d) A Court of Criminal Appeals may review, under section 866 of this title (Article 66) --

(1) any court-martial case which (A) is subject to action by the Judge Advocate General under this section, and (B) is sent to the Court of Criminal Appeals by order of the Judge Advocate General; and,

(2) any action taken by the Judge Advocate General under this section in such case.

On the one hand, the presumptive view, and that taken by the majority, is that subsections (1) and (2) are to be read together, as they are connected by the conjunctive "and." Thus, there is a trigger, controlled by TJAG, followed by what might be viewed as a subject-matter limitation. In other words, according to the majority opinion, a CCA may only review an Article 69, UCMJ, case which is subject to action by the TJAG under Article 69, UCMJ, and is also sent to the CCA by the TJAG in accordance with subsection (d)(1). Upon undergoing its review, the CCA may only review "any action taken" by the TJAG "in such case," per subsection (d)(2). "Such case" is thus a case reviewed by the TJAG and sent to the CCA. This narrow

4

reading is also consistent with the general principle that the jurisdiction of Article I courts should be read narrowly.

On the other hand, the real question presented in this case is whether there is a different view that is both available, and, perhaps, more persuasive. See King v. Burwell, 192 L. Ed.2d 483, 501 (2015) (recognizing that in certain cases, "the context and structure of [an] Act compel [courts] to depart from what would otherwise be the most natural reading of the pertinent statutory phrase"). Here, the statutory language supports an alternate reading to that propounded by the majority: namely, that subsection (d)(2) of Article 69, UCMJ, is a second grant of jurisdictional authority, rather than a third requirement contained in a single grant of authority.

Under this view, contrary to the majority opinion's assumption, the inclusion of "and" between subsections (1) and (2) is not used as a conjunctive. It is used to present a list of two. See 192 L. Ed.2d at 494 ("[O]ftentimes the 'meaning -- or ambiguity -- of certain words or phrases may only become evident when placed in context.'" (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132 (2000))).

Indeed, as several federal circuit courts have recognized, at times the conjunctive "and" and the disjunctive "or" are interchangeable, particularly where "a strict grammatical construction will frustrate legislative intent." United States

5

v. Moore, 613 F.2d 1029, 1040 (D.C. Cir. 1979); see also McCormick v. Dep't of Air Force, 329 F.3d 1354, 1355 (Fed. Cir. 2003) ("Our sister circuits have likewise read 'or' to mean 'and' or 'and' to mean 'or' in order to effectuate Congress's intent." (citations omitted)); United States v. Gomez-Hernandez, 300 F.3d 974, 978 (8th Cir. 2002) ("Although the word 'and' is usually a conjunctive, to ascertain the clear intention of the legislature . . . courts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or.'" (citation omitted) (internal quotations marks omitted)); United States v. Sherman, 150 F.3d 306, 317 (3d Cir. 1998) (adopting Moore's proposition that the word "or" in statute at issue is more appropriately read as "and"); United States v. Smeathers, 884 F.2d 363, 364 (8th Cir. 1989) (citing Moore in support of the proposition that "[n]ormally the word 'or' connotes disjunction . . . . This rule of construction yields, however, when a disjunctive reading would frustrate a clear statement of legislative intent." (citations omitted)); Bruce v. First Fed. Sav. & Loan Ass'n of Conroe, Inc., 837 F.2d 712, 713 (5th Cir. 1988) (holding that the word "and" in the antitying provision of 12 U.S.C. § 1464(q)(1) should properly be read as "or"); United States v. Scrimgeour, 636 F.2d 1019, 1022-24 (5th Cir. 1981) (adopting Moore to conclude that the use of "or" means "and" in statute at issue).

This Court has also recognized that, at times, "and" must be read to mean "or" and "or" to mean "and" so as to give effect to legislative intent. See United States v. Tee, 20 C.M.A. 406, 407, 43 C.M.R. 246, 247 (1971) (collecting cases) ("Where legislative intent compels such a result, the normal meanings of 'and' and 'or' may be reversed."); United States v. Chilcote, 20 C.M.A. 283, 286, 43 C.M.R. 123, 126 (1971) ("The disjunctive 'or' and the conjunctive 'and,' . . . are not to be considered as interchangeable unless reasonably necessary in order to give effect to the intention of the enacting body." (citing Earle v. Zoning Bd. of Review of Warwick, 191 A.2d 161, 163 (R.I. 1963)), superseded by statute on other grounds, Pub. L. No. 98-209, § 7(b), 97 Stat. 1402 (1983))); see also United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F. 2008) (finding that the "substantial basis in law and fact" test for the providence of a plea which "is presented in the conjunctive (i.e., law and fact) . . . is better considered in the disjunctive (i.e., law or fact)").

In this reading, section (d) of Article 69, UCMJ, presents the chapeau -- "[a] CCA may review" -- and subsections (1) and (2) present the two distinct circumstances in which a CCA would have jurisdiction under Article 69, UCMJ. First, the CCA may review any case subject to action by the TJAG that the TJAG refers to the CCA, per subsection (d)(1). Under such

7

circumstances, although a case is "subject to action by the TJAG," the TJAG may decide not to review the case and send it on to the CCA instead. Second, the CCA may review any case where the TJAG has taken "any action" under this section. This is a CCA review of what the TJAG has actually done, to ensure that it comports with the law. Under this reading, the CCA would not have jurisdiction in those cases where: (a) the accused waives or withdraws his right to appellate review, or (b) the TJAG reviews the case and takes no action, i.e., affirms the case "as is."

This alternate reading of the statute interpreting "and" to be disjunctive is supported by several canons of statutory interpretation, including the so-called "plain language" canon, which, in this case, proves not so plain. First, the heading seems to suggest a list of two. Second, "subject to action" is prefatory language. The TJAG <u>could</u> take action. This language is thus distinct from subsection (d)(2) where the TJAG has in fact taken "any action." Subsection (d)(1)(A), requiring that a court-martial case be "subject to action" by the TJAG, would then become redundant language if "[a]ny action taken by the" TJAG under subsection (d)(2) was an additional requirement, rather than a separate predicate for jurisdiction. Presumably, if the TJAG has taken "[a]ny action" in a case, that case was "subject to action by the" TJAG. Reading the "and" in the

disjunctive, therefore, would not only comport with the plain language of the statute, but also avoid the rule against surplusage.  See Ratzlaf v. United States, 510 U.S. 135, 140-41 (1994).

Third, reading "and" in the disjunctive is also arguably consistent with the overall purpose of the UCMJ and appellate schemes, because it provides for appellate judicial review within a unitary military justice system rather than moving such review to boards of review or habeas review in Article III courts.  It is hard to imagine that Congress intended to create a system where the government could abuse a right or skirt the law and then avoid judicial review by having the convening authority ensure the punishment was sub-jurisdictional, preventing the CCA from rectifying the error.  Congress, we know, did not intend to limit CCA review only to Article 66, UCMJ, qualifying-sentence cases, because the CCA can and does exercise review on an interlocutory basis where the sentence is not yet known.  See Kastenberg, 72 M.J. at 368 ("A writ petition may be 'in aid of' a court's jurisdiction even on interlocutory matters where no finding or sentence has been entered in the court-martial.").

Despite the merits of this alternative interpretation, I nonetheless believe that the presumptive view that CCA review is not triggered unless and until the TJAG refers an Article 69,

9

UCMJ, case to the CCA is -- at this stage in UCMJ practice -- the better view.  There is plain language support for this reading in the final clause of subsection (d)(2) of Article 69, UCMJ, "in such case."  If this clause did not refer back to subsection (d)(1), it is not clear to what it refers, and this language would therefore become superfluous.  Moreover, Article 69, UCMJ, has not previously been interpreted as providing two separate grants of jurisdiction, but rather as a singular grant with three threshold requirements.  If TJAGs' actions were subject to CCA review without referral to the CCA by the TJAG, then we would expect to have seen multiple cases involving such exercise of jurisdiction.  You would also expect a track record of CCA review of courts-martial not otherwise subject to review under Article 66, UCMJ.  The President and executive branch have interpreted Article 69, UCMJ, this way as well.  This is reflected by the discussion in Rule for Court-Martial (R.C.M.) 1201(b)(3), which states:  "Review of a case by a Judge Advocate General under this subsection is not part of appellate review within the meaning of Article 76 or R.C.M. 1201."

Further, this view comports with legislative history.  The original version of Article 69, UCMJ, passed by the House of Representatives, did not authorize certification of issues by the TJAG to the CCA at all, providing no opportunity for appellate review of sub-jurisdictional cases.  See United States

v. Monett, 16 C.M.A. 179, 181, 36 C.M.R. 335, 336-37 (1966). The Senate added the certification provision to give the TJAG authority to certify a case for CCA review, suggesting that appellate review without referral by the TJAG was never available for sub-jurisdictional cases. Id. Finally, where Article I courts are concerned, the tie goes to the narrow view of jurisdiction.

In any event, even if we were to accept Appellant's alternative reading of the statute, the CCA would not have jurisdiction over this case. The TJAG did not refer the case to the CCA and the TJAG did not take any action in the case. Therefore, I concur in the result.

B. Article 69, UCMJ, Does not Serve the Purposes for Which it Was Intended

Article 69, UCMJ, was enacted in 1956 with the purpose of preserving "the right to present minor cases for review by" the CCA in order to "achiev[e] certainty in, and uniformity of, interpretation of the Uniform Code in each armed force, as well as for all the armed forces." See Monett, 16 C.M.A. at 181, 36 C.M.R. at 337.

Whatever was intended with Article 69, UCMJ, the fact is TJAGs do not as a matter of practice refer cases to the CCA or to this Court pursuant to Article 69, UCMJ, review. That means that a majority of cases arising under the UCMJ are sub-

11

jurisdictional.  That also means that a majority of courts-martial are not subject to appellate judicial review or civilian judicial review.

TJAGs are not independent or impartial judicial entities. TJAGs represent the government and, while in theory they are to exercise independent judgment when it comes to Article 69, UCMJ, review -- and I do not doubt the sincerity with which they do so -- the fact is, they are closely aligned with the government. TJAG review, as a matter of appearance, is neither independent of government interest nor impartial.

A restrictive reading of Article 69, UCMJ, also means that if the government wishes to avoid appellate judicial review, it need only ensure that an accused receives a sub-jurisdictional sentence.  This can be done through the use of plea bargains and plea agreements.  The accused's usual interest, of course, beyond acquittal, is to minimize sentence exposure, not to ensure appropriate appellate review of legal questions, or to otherwise ensure that the government upholds the spirit and letter of the Fourth, Fifth, and Sixth Amendments.

Nor are legal questions, due process issues, and questions of legal sufficiency limited to cases involving sentences greater than one year's confinement or a punitive discharge. Although it is safe to assume more complex cases with greater punitive exposure are more likely to raise legal questions

warranting appellate review and decision, this does not mean sub-jurisdictional cases are devoid of legal questions warranting judicial review.  This means that the standard of justice as between services in sub-jurisdictional cases may not, in fact, be uniform between the services.

The consequence is that a majority of cases are not subject to appellate review by the CCAs.  This cannot be what Congress intended when it created a military justice system subject to appellate review.  This also means a majority of appellate cases are not subject to civilian oversight.  This cannot be what Congress intended when it created a system of military justice subject to civilian judicial oversight.  But Article 69, UCMJ, is not clear, and this is the result.

Therefore, I would invite the President and the Congress to consider Article 69, UCMJ, anew and in clear and plain language determine where and when courts-martial should be subject to direct judicial review.  Without such clarity, the government will argue for and apply the narrowest possible jurisdiction, a view with which this Court has shown a recent propensity to agree.