# CLINTON, PRESIDENT OF THE UNITED STATES, ET AL. *v.* GOLDSMITH

No. 98–347.   Argued March 22, 1999—Decided May 17, 1999

530

SOUTER, J., delivered the opinion for a unanimous Court.

*Deputy Solicitor General Dreeben* argued the cause for petitioners. With him on the briefs were *Solicitor General Waxman, James A. Feldman, Lisa Schiavo Blatt,* and *Judith A. Miller.*

*John M. Economidy* argued the cause for respondent. With him on the brief were *Carol L. Hubbard, Karen L. Hecker,* and *Douglas H. Kohrt.*

JUSTICE SOUTER delivered the opinion of the Court.

The challenge here is to the use of the All Writs Act, 28 U. S. C. § 1651(a), by the Court of Appeals for the Armed Forces, to enjoin the President and various military officials from dropping respondent from the rolls of the Air Force. Because that court's process was neither "in aid of" its strictly circumscribed jurisdiction to review court-martial findings and sentences under 10 U. S. C. § 867 nor "necessary or appropriate" in light of a servicemember's alternative opportunities to seek relief, we hold that the Court of Appeals for the Armed Forces lacked jurisdiction to issue the injunction.

I

Respondent James Goldsmith, a major in the United States Air Force, was ordered by a superior officer to inform his sex partners that he was HIV-positive and to take measures to block any transfer of bodily fluids during sexual relations. Contrary to this order, on two occasions Goldsmith had unprotected intercourse, once with a fellow officer and once with a civilian, without informing either that he was carrying HIV.

As a consequence of his defiance, Goldsmith was convicted by general court-martial of willful disobedience of an order from a superior commissioned officer, aggravated assault with means likely to produce death or grievous bodily harm, and assault consummated by battery, in violation of Articles 90 and 128 of the Uniform Code of Military Justice (UCMJ), 10 U. S. C. §§ 890, 928(b)(1), (a). In 1994, he was sentenced to six years' confinement and forfeiture of $2,500 of his pay

each month for six years. The Air Force Court of Criminal Appeals affirmed his conviction and sentence in 1995, and when he sought no review of that decision in the United States Court of Appeals for the Armed Forces (CAAF), his conviction became final, see § 871(c)(1)(A).

In 1996, Congress expanded the President's authority by empowering him to drop from the rolls of the Armed Forces any officer who had both been sentenced by a court-martial to more than six months' confinement and served at least six months.[1] See National Defense Authorization Act for Fiscal Year 1996, 110 Stat. 325, 10 U. S. C. §§ 1161(b)(2), 1167 (1994 ed., Supp. III).[2] In reliance on this statutory authorization, the Air Force notified Goldsmith in 1996 that it was taking action to drop him from the rolls.

Goldsmith did not immediately contest the proposal to drop him, but rather petitioned the Air Force Court of Criminal Appeals for extraordinary relief under the All Writs Act, 28 U. S. C. § 1651(a), to redress the unrelated alleged inter-

---

[1] When a servicemember is dropped from the rolls, he forfeits his military pay. See 37 U. S. C. § 803. The drop-from-the-rolls remedy targets a narrow category of servicemembers who are absent without leave (AWOL) or else have been convicted of serious crimes. Since 1870, the President has had authority to drop from the rolls of the Army any officer who has been AWOL for at least three months. See Act of July 15, 1870, § 17, 16 Stat. 319. The power was subsequently extended to officers confined in prison after final conviction by a civil court, see Act of Jan. 19, 1911, ch. 22, 36 Stat. 894, and then to "any armed force" officer AWOL for at least three months or else finally sentenced to confinement in a federal or state penitentiary or correctional institution, see Act of May 5, 1950, § 10, 64 Stat. 146.

[2] Section 1161(b)(2) authorizes the President to "drop from the rolls of any armed force any commissioned officer . . . who may be separated under Section 1167 of this title by reason of a sentence to confinement adjudged by a court-martial." Section 1167 provides that "a member sentenced by a court-martial to a period of confinement for more than six months may be separated from the member's armed force at any time after the sentence to confinement has become final . . . and the member has served in confinement for a period of six months."

ruption of his HIV medication during his incarceration. The Court of Criminal Appeals ruled that it lacked jurisdiction to act, and it was in Goldsmith's appeal from that determination that he took the first steps to raise the issue now before us, an entirely new claim that the Air Force's action to drop him from the rolls was unconstitutional. He did not challenge his underlying court-martial conviction (the appeal period for which had expired, see Rule 19(a)(1), CAAF Rules of Practice and Procedure). But he charged that the proposed action violated the *Ex Post Facto* Clause, U. S. Const., Art. I, § 9, cl. 3 (arguing that the statute authorizing it had been enacted after the date of his conviction), and the Double Jeopardy Clause, U. S. Const., Amdt. 5 (arguing that the action would inflict successive punishment based on the same conduct underlying his first conviction). 48 M. J. 84, 89–90 (CAAF 1998). The CAAF, on a division of 3 to 2, granted the petition for extraordinary relief and relied on the All Writs Act, 28 U. S. C. § 1651(a), in enjoining the President and various other Executive Branch officials from dropping respondent from the rolls of the Air Force.[3] We granted certiorari, 525 U. S. 961 (1998), and now reverse.[4]

## II

When Congress exercised its power to govern and regulate the Armed Forces by establishing the CAAF, see U. S. Const., Art. I, § 8, cl. 14; 10 U. S. C. § 941; see generally *Weiss*

---

[3] Because respondent had been released from confinement, the CAAF denied respondent's writ-appeal petition concerning his medical treatment claim as moot. See 48 M. J. 84, 87–88 (1998).

As a result of the CAAF's order, respondent has not been dropped from the rolls, and has returned to active duty status. The Air Force initiated an administrative separation proceeding against respondent, see 10 U. S. C. § 1181, which has been deferred pending resolution of this case. See Brief for Petitioners 8, n. 2.

[4] In light of our holding that the CAAF lacked jurisdiction in this case, we do not reach the merits of respondent's double jeopardy and *ex post facto* claims.

v. *United States,* 510 U. S. 163, 166–169 (1994), it confined the court's jurisdiction to the review of specified sentences imposed by courts-martial: the CAAF has the power to act "only with respect to the findings and sentence as approved by the [court-martial's] convening authority and as affirmed or set aside as incorrect in law by the Court of Criminal Appeals." 10 U. S. C. § 867(c).[5] Cf. *Parisi* v. *Davidson,* 405 U. S. 34, 44 (1972) (Court of Military Appeals lacked express authority over claim for discharge based on conscientious objector status). Despite these limitations, the CAAF asserted jurisdiction and purported to justify reliance on the All Writs Act in this case on the view that "Congress intended [it] to have broad responsibility with respect to administration of military justice," 48 M. J., at 86–87,[6] a position that Goldsmith urges us to adopt. This we cannot do.

While the All Writs Act authorizes employment of extraordinary writs, it confines the authority to the issuance of process "in aid of" the issuing court's jurisdiction. 28 U. S. C. § 1651(a) ("[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"). Thus, although military appellate courts are among those empowered to issue extraordinary writs under the Act, see *Noyd* v. *Bond,* 395 U. S. 683, 695, n. 7 (1969), the express terms of the Act confine the power of the CAAF to issuing process "in aid of" its existing statu-

---

[5] When Congress established the Court of Military Appeals (the CAAF's predecessor), it similarly confined its jurisdiction to the review of specified sentences imposed by courts-martial. See Act of May 5, 1950, ch. 169, Art. 67(d), 64 Stat. 130. See also H. R. Rep. No. 491, 81st Cong., 1st Sess., 32 (1949); S. Rep. No. 486, 81st Cong., 1st Sess., 3, 28–29 (1949).

[6] One judge was even more emphatic: "We should use our broad jurisdiction under the [UCMJ] to correct injustices like this and we need not wait for another court to perhaps act. . . . Our Court has the responsibility of protecting the rights of all servicemembers in court-martial matters." 48 M. J., at 91 (Sullivan, J., concurring).

tory jurisdiction; the Act does not enlarge that jurisdiction, see, *e. g., Pennsylvania Bureau of Correction* v. *United States Marshals Service,* 474 U. S. 34, 41 (1985). See also 16 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3932, p. 470 (2d ed. 1996) ("The All Writs Act . . . is not an independent grant of appellate jurisdiction"); 19 J. Moore & G. Pratt, Moore's Federal Practice § 204.02[4] (3d ed. 1998) ("The All Writs Act cannot enlarge a court's jurisdiction").

We have already seen that the CAAF's independent statutory jurisdiction is narrowly circumscribed. To be more specific, the CAAF is accorded jurisdiction by statute (so far as it concerns us here) to "review the record in [specified] cases reviewed by" the service courts of criminal appeals, 10 U. S. C. §§ 867(a)(2), (3), which in turn have jurisdiction to "revie[w] court-martial cases," § 866(a). Since the Air Force's action to drop respondent from the rolls was an executive action, not a "findin[g]" or "sentence," § 867(c), that was (or could have been) imposed in a court-martial proceeding,[7] the elimination of Goldsmith from the rolls appears straightforwardly to have been beyond the CAAF's jurisdiction to review and hence beyond the "aid" of the All Writs Act in reviewing it.

Goldsmith nonetheless claims that the CAAF has satisfied the "aid" requirement of the Act because it protected and effectuated the sentence meted out by the court-martial. Goldsmith emphasizes that the court-martial could have dis-

---

[7] A court-martial is specifically barred from dismissing or discharging an officer except as in accordance with the UCMJ, which gives it no authority to drop a servicemember from the rolls. See Rules for Courts-Martial 1003(b)(9)(A)–(C); Rule 1003(b)(9) ("A court-martial may not adjudge an administrative separation from the service"). Moreover, respondent brought the petition against the President, the Secretary of Defense, and military officials who were not even parties to the court-martial.

missed him from service, but instead chose to impose only confinement and forfeitures.[8] Hence, he says the CAAF merely preserved that sentence as the court-martial imposed it, by precluding additional punishment, which would incidentally violate the *Ex Post Facto* and Double Jeopardy Clauses. But this is beside the point, for two related reasons. First, Goldsmith's court-martial sentence has not been changed; another military agency has simply taken independent action.[9] It would presumably be an entirely different matter if a military authority attempted to alter a judgment by revising a court-martial finding and sentence to increase the punishment, contrary to the specific provisions of the UCMJ, and it certainly would be a different matter when such a judgment had been affirmed by an appellate court. In such a case, as the Government concedes, see Tr. of Oral Arg. 15, 19, 52, the All Writs power would allow the appellate court to compel adherence to its own judgment. See, *e. g., United States* v. *United States Dist. Court for Southern Dist. of N. Y.,* 334 U. S. 258, 263–264 (1948). Second, the CAAF is not given authority, by the All Writs Act or otherwise, to oversee all matters arguably related to military justice, or to act as a plenary administrator even of criminal judgments it has affirmed. Simply stated, there is no source of continuing jurisdiction for the CAAF over all actions administering sentences that the CAAF at one time had the power to review. Thus the CAAF spoke too expansively when it held itself to be "empowered by the All Writs Act to grant extraordinary relief in a case in which the court-martial rendered a sentence that constituted an

---

[8] At the court-martial, respondent faced a maximum punishment of dismissal, confinement for 10 years, forfeiture of all pay and allowances, and a fine.

[9] Indeed, the approved findings and sentence in Goldsmith's case had become final over one year before the Air Force initiated its action to drop him from the rolls.

adequate basis for direct review in [the CAAF] after review in the intermediate court," 48 M. J., at 87.[10]

## III

Even if the CAAF had some seriously arguable basis for jurisdiction in these circumstances, resort to the All Writs Act would still be out of bounds, being unjustifiable either as "necessary" or as "appropriate" in light of alternative remedies available to a servicemember demanding to be kept on the rolls.[11]   The All Writs Act invests a court with a power essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law.   See, *e. g., Carlisle* v. *United States,* 517 U. S. 416, 429 (1996) (" 'The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute' " (quoting *Pennsylvania Bureau of Correction,* 474 U. S., at 43)).   See also 19 Moore's Federal Practice §201.40 ("[A] writ may not be used . . . when another method of review will suffice").   This limitation operates here, since other ad-

---

[10] The court, moreover, was simply wrong when it treated itself as a court of original jurisdiction, see *supra,* at 535.

[11] These remedies are in addition to the review as of right by the military department's Court of Criminal Appeals of any court-martial sentence that includes punitive dismissal or discharge.   See 10 U. S. C. §866(b)(1); §867(a) (decisions of the Court of Criminal Appeals subject to discretionary review by the CAAF).   And of course, once a criminal conviction has been finally reviewed within the military system, and a servicemember in custody has exhausted other avenues provided under the UCMJ to seek relief from his conviction, see *Noyd* v. *Bond,* 395 U. S. 683, 693–699 (1969), he is entitled to bring a habeas corpus petition, see 28 U. S. C. §2241(c), claiming that his conviction is affected by a fundamental defect that requires that it be set aside.   See, *e. g., Burns* v. *Wilson,* 346 U. S. 137, 142 (1953) (opinion of Vinson, C. J.).   See also *Calley* v. *Callaway,* 519 F. 2d 184, 199 (CA5 1975); *Gorko* v. *Commanding Officer, Second Air Force,* 314 F. 2d 858, 859 (CA10 1963).   In this case, however, respondent chose not to challenge his underlying conviction.   See *supra,* at 533.

ministrative bodies in the military, and the federal courts, have authority to provide administrative or judicial review of the action challenged by respondent.

In response to the notice Goldsmith received that action was being considered to drop him from the rolls, he presented his claim to the Secretary of the Air Force. See Tr. of Oral Arg. 4–5. If the Secretary takes final action to drop him from the rolls (as he has not yet done), Goldsmith will (as the Government concedes) be entitled to present his claim to the Air Force Board for Correction of Military Records (BCMR). This is a civilian body within the military service, with broad-ranging authority to review a service-member's "discharge or dismissal (other than a discharge or dismissal by sentence of a general court-martial)," 10 U. S. C. § 1553(a), or "to correct an error or remove an injustice" in a military record, § 1552(a)(1).[12]

---

[12] Respondent argues nonetheless that seeking BCMR review in his case would have been futile (especially in light of his life-threatening illness) since BCMR's lack authority to declare statutes unconstitutional, cannot consider records of courts-martial and related administrative records (with two inapplicable exceptions), and are generally "'unresponsive, bureaucratic extensions of the uniformed services,'" Brief for Respondent 16 (quoting H. R. Conf. Rep. No. 104–450, p. 798 (1996)).

In light of the fact that respondent chose to circumvent BCMR review, we need not address whether the Air Force BCMR has the power to correct a record that is erroneous as a result of a constitutional violation. Cf. *Guerra* v. *Scruggs*, 942 F. 2d 270, 273 (CA4 1991) ("The [Army BCMR] has authority to consider claims of constitutional, statutory, and regulatory violations"); *Bois* v. *Marsh*, 801 F. 2d 462, 467 (CADC 1986) ("[Appellant's] claims based on [the] Constitution, executive orders and Army regulations 'could readily have been made within the framework of this intramilitary procedure'" (quoting *Chappell* v. *Wallace*, 462 U. S. 296, 303 (1983))). And while it is true that unless specifically authorized a BCMR may not correct a court-martial record, see 10 U. S. C. § 1552(f), it may still consider the record, especially where, as here, the court-martial record is relevant in determining the validity of the subsequent dropping from the rolls. Finally, the alleged unresponsive nature of the BCMR's, if true, would in

Respondent may also have recourse to the federal trial courts. We have previously held, for example, that "[BCMR] decisions are subject to judicial review [by federal courts] and can be set aside if they are arbitrary, capricious, or not based on substantial evidence." *Chappell* v. *Wallace*, 462 U. S. 296, 303 (1983). A servicemember claiming something other than monetary relief may challenge a BCMR's decision to sustain a decision to drop him from the rolls (or otherwise dismissing him) as final agency action under the Administrative Procedure Act (APA), 5 U. S. C. § 551 *et seq.*; see §§ 704, 706. For examples of such challenges entertained in the district courts or courts of appeals, see *Roelofs* v. *Secretary of Air Force*, 628 F. 2d 594, 599–601 (CADC 1980) (proceeding in District Court under APA raising due process challenge to administrative discharge based on conviction of civilian offense); *Walker* v. *Shannon*, 848 F. Supp. 250, 251, 254–255 (DC 1994) (suit under APA for review of Army BCMR decision upholding involuntary separation). In the instances in which a claim for monetary relief may be framed, a servicemember may enter the Court of Federal Claims with a challenge to dropping from the rolls (or other discharge) under the Tucker Act, 28 U. S. C. § 1491.[13] See, *e. g.*, *Doe* v. *United States*, 132 F. 3d 1430, 1433–1434 (CA Fed. 1997) (suit for backpay and correction of military records following administrative discharge); *Mitchell* v. *United States*, 930 F. 2d 893, 896–897 (CA Fed. 1991) (suit for back-

no way alter the fact that BCMR's are legislatively authorized to provide the relief sought by respondent.

In any event, it is clear as noted in the text that follows that respondent's constitutional objections could have been addressed by the federal courts.

[13] Under the Tucker Act, the Court of Federal Claims has exclusive jurisdiction over nontort claims against the Government for greater than $10,000. See 28 U. S. C. § 1491. Determinations of the Court of Federal Claims may be appealed to the Federal Circuit.

pay, reinstatement, and correction of records). Or he may enter a district court under the "Little Tucker Act," 28 U. S. C. § 1346(a)(2).[14]  See, e. g., *Thomas* v. *Cheney*, 925 F. 2d 1407, 1411, 1416 (CA Fed. 1991) (reviewing challenge to action to drop plaintiff from the rolls); *Sibley* v. *Ball*, 924 F. 2d 25, 29 (CA1 1991) (transferring to Federal Circuit case for backpay because within purview of "Little Tucker Act").

In sum, executive action to drop respondent from the rolls falls outside of the CAAF's express statutory jurisdiction, and alternative statutory avenues of relief are available. The CAAF's injunction against dropping respondent from the rolls of the Air Force was neither "in aid of [its] jurisdictio[n]" nor "necessary or appropriate."  Accordingly, we reverse the court's judgment.

*It is so ordered.*

---

[14] The "Little Tucker Act," 28 U. S. C. § 1346(a)(2), confers jurisdiction on district courts for claims of $10,000 or less.  Appeals are taken to the Federal Circuit.