BAKER, Chief Judge,
with whom COX, Senior Judge, joins
(dissenting):
The general public has a qualified constitutional right of access to criminal trials. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (plurality opinion). Public access to a criminal trial includes appropriate access to filings. Nixon v. Warner Commc’ns, Inc., 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). “Congress intended that, to the extent ‘practicable,’ trial by court-martial should resemble a criminal trial in a federal district court.” United States v. Valigura, 54 M.J. 187, 191 (C.A.A.F.2000). The right to a public trial is embedded in Rule for Courts-Martial (R.C.M.) 806, which provides that “[ejxcept as otherwise provided in this rule, courts-martial shall be open to the public.”
However, what the scope of this right might be in general, or in the context of this specific court-martial, remains unknown, and will remain so.[1] That is because this Court has determined that a military judge’s application of R.C.M. 806 to an ongoing court-martial falls outside this Court’s jurisdiction to review. As this Court and the Army Court have previously concluded, “public confidence in matters of military justice would quickly erode if courts-martial were arbitrarily closed to the public.” United States v. Scott, 48 M.J. 663, 665 (A.Ct.Crim.App.1998) (quoting United States v. Travers, 25 M.J. 61, 62 (C.M.A.1987)). As a result, I respectfully dissent.
There are two threshold issues in this case. First, does the Court have jurisdiction to hear this extraordinary writ petition? Second, does a nonparty to the court-martial have standing to assert a right to public access to this court-martial in a context where the accused has not asserted such a right himself?
It is well settled that the media have standing to complain if access to courts has been denied or unconstitutionally restricted. Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 7, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (“The right to an open public trial is a shared right of the accused and the public, the common concern being the assurance of fairness.”); Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 603, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); ABC, Inc. v. Powell, 47 M.J. 363, 365 (C.A.A.F.1997) (“[Wjhen an accused is entitled to a public hearing, the press enjoys the same right and has standing to complain if access is denied.”); see also Washington Post v. Robinson, 935 F.2d 282, 288-290 (D.C.Cir.1991) (holding that the press and the public should have notice of closure to have an opportunity to raise a First Amendment right of access claim).
On the jurisdictional question, the majority relies on Clinton v. Goldsmith, 526 U.S. 529, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999), which is distinguishable from Appellants’ case. While Goldsmith provides the current state of the law regarding this Court’s ability to issue writs under the All Writs Act, neither the facts of Goldsmith nor the jurisdictional proscriptions contained therein apply to Appellants’ case. Goldsmith concerned an administrative matter that was completely un-reviewable by this Court. Id. at 535, 119 S.Ct. 1538. In contrast, the writ before this Court appeals a specific ruling of a specific Rule for Courts-Martial in a specific and ongoing court-martial. The issue does not *131 address the application of the Freedom of Information Act, a clear collateral matter entrusted to other courts, but a military judge’s application of R.C.M. 806 to a specific court-martial. Appellate review of military judges’ rulings in courts-martial is at the core of this Court’s jurisdiction. That is what we do.
Furthermore, what Goldsmith proscribes does not apply here. Goldsmith bars this Court from exercising “continuing jurisdiction” over a previously resolved matter or from intervening with the “independent action” of a separate military agency or the executive branch. 526 U.S. at 536, 119 S.Ct. 1538. In the current case, the court-martial underlying this writ-appeal has not been resolved, nor would exercising jurisdiction here constitute intervening with the “independent action” of a separate military agency or the executive branch.
In solely isolating the text of Article 67, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 867 (2006), the majority misses the greater whole. Congress established a three-tier military justice system with adoption of the Uniform Code of Military Justice, and four tiers when Supreme Court review was added in 1984, when the Military Justice Act of 1983 took effect. Military Justice Act of 1983, Pub.L. No. 98-209, § 10, 97 Stat. 1393, 1405-06 (1983) (codified as amended at 28 U.S.C. § 1259 and 10 U.S.C. § 867a). Congress did not intend for military judges to operate without review when applying the Rules for Courts-Martial or the Military Rules of Evidence. Neither did Congress intend that review to come in the form of collateral appeal to Article III courts in the context of ongoing courts-martial. That would not provide for a uniform application of the law between services and between courts-martial. It would also be unworkable.
The point is illustrated with respect to the application of R.C.M. 806, the rule at issue in this case. It states: Public access includes appropriate access to court records and filings. In Nixon v. Warner Communications, for example, the Court stated: “[i]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.” 435 U.S. at 597, 98 S.Ct. 1306 (footnote omitted). As the Third Circuit stated in United States v. Antar, “[i]t would be an odd result indeed were we to declare that our courtrooms must be open, but that transcripts of the proceedings occurring there may be closed, for what exists of the right of access if it extends only to those who can squeeze through the door?” 38 F.3d 1348, 1360 (3d Cir.1994). However, the right to judicial records is not absolute. As the Supreme Court noted, “[ejvery court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper uses.” Nixon, 435 U.S. at 598, 98 S.Ct. 1306.
(a) In general. Except as otherwise provided in this rule, courts-martial shall be open to the public. For purposes of this rule, “public” includes members of both the military and civilian communities.
As detailed above, this Court, like other courts, has determined that members of the public have standing to assert the right to public access. The question, then, is one of appellate jurisdiction to review a military judge’s application of R.C.M. 806, or, perhaps, the failure to apply R.C.M. 806. Under the majority’s reading of the UCMJ, R.C.M. 806 rulings regarding public access to courts-martial are unreviewable by those courts established by Congress to adjudicate military justice appeals because public access issues are raised before the findings and sentence are approved by the convening authority. Of course public access issues would arise before the findings and sentence are approved; a public trial necessarily occurs before findings and sentencing.
Moreover, though the majority claims otherwise, today’s opinion bars this Court from exercising jurisdiction in an appeal arising from an accused’s assertion of his R.C.M. 806 right to a public trial. That is because the majority’s view of jurisdiction hinges entirely on the words in Article 67, UCMJ: “[t]he Court of Appeals for the Armed Forces may act only with respect to the findings and *132 sentence as approved by the convening authority.”
The majority’s interpretation leaves collateral appeal to Article III courts as the sole mechanism to vindicate the right to a public trial found in R.C.M. 806 beyond the initial good judgment of the military judge. This is unworkable and cannot reflect congressional design or presidential intent. Among other things, such a reading would result in the uneven application of the law depending, as it would, on the fortuity of the geographic locale where a court-martial is convened. In the case of overseas courts-martial it is not clear how this would work at all. Military judges would presumably apply, or not apply, R.C.M. 806 without appellate review, for it is not clear which Article III courts, if any, would have jurisdiction to address collateral R.C.M. 806 appeals arising overseas.
A system dependent on Article III courts’ review of R.C.M. 806 appeals by either the media or an accused will yield three other untenable consequences.
First, the military judge will be compelled to conduct a trial with the prospect that an unknown collateral court, rather than the trial judge herself, will determine who has access to the trial — as well as when and whether any documents, including evidence, are disclosed to the parties or to the public, as part of what it means to have a public trial. As Senior Judge Cox ably argues, based on the law and his experience as a trial judge, a trial judge must have the authority to control her own courtroom. The majority’s interpretation usurps that authority by creating a system dependent on collateral review.
Second, in the event of conviction, a collateral court’s ruling regarding the application of R.C.M. 806 will be subject to review by military appeals courts and this Court should an accused allege that a violation of his right to a public trial impacted his right to a fair trial, the findings in his case, or the sentence.
Third, and most likely, collateral courts might exercise comity and wisely avoid the prospect of interfering in an ongoing court-martial without knowing all the facts and circumstances within that court-martial. This, however, would leave the public and the accused without a mechanism to vindicate or test the scope of public access provided by R.C.M. 806 until after the trial because, under the majority’s view, only then would military appellate courts and this Court have jurisdiction to review issues of public access. This defeats the purpose of the rule.
This array of absurd consequences is most assuredly not what Congress intended when it established a uniform system of military justice. And it is most assuredly not what the President intended when he promulgated R.C.M. 806, pursuant to his Article 36, UCMJ, 10 U.S.C. § 836 (2006), authority.
[Jurisdiction is conferred ultimately by the Constitution, and immediately by statute. However, this principle does not mean that our jurisdiction is to be determined by teasing out a particular provision of a statute and reading it apart from the whole. Since the beginning of jurisprudence under the UCMJ, we have read the statutes governing our jurisdiction as an integrated whole, with the purpose of carrying out the intent of Congress in enacting them.
United States v. Lopez de Victoria, 66 M.J. 67, 69 (C.A.A.F.2008). That is, until today. As a result, I respectfully dissent as well as join Senior Judge Cox’s analysis regarding the role of the military judge.

. The analysis to R.C.M. 806 recognizes as much, stating "[t]he applicability of these [Supreme Court] cases to courts-martial is not certain_ Nevertheless the rule and the discussion are based on recognition of the value to the public of normally having courts-martial open to the pub-lie. That is particularly true since the public includes members of the military community.” Manual for Courts-Martial, United States, Analysis of the Rules for Courts-Martial app. 21 at A21-48 (2012 ed.).