Judge STUCKY,
with whom Judge OHLSON joins, dissenting.
A valid waiver of an issue at trial leaves no error to correct on appeal. United States v. Campos, 67 M.J. 330, 332 (C.A.A.F.2009); United States v. Gladue, 67 M.J. 311, 313 (C.A.A.F.2009) (holding that a valid trial waiver extinguishes the error). Nevertheless, the majority concludes, in effect, that a waiver instead places an issue in a kind of deathlike suspended animation, which the Court of Criminal Appeals (CCA) has the unfettered discretion to reanimate. See United States v. Chin, 75 M.J. 220, 222-23 (C.A.A.F.2016). I can find no support in the UCMJ for such an assertion. Therefore, I respectfully dissent.
To reach its conclusion, the majority opinion relies on faulty readings of Articles 61 and 66, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 861, 866 (2012). Article 66(c) provides that a CCA “may affirm only such findings of guilty and the sentence ... as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.” The majority reads the “should be approved” language in isolation from the rest of Article 66 and the remainder of the UCMJ. By doing so, it concludes that the CCAs have plenary review of the findings and sentence such that they may ignore an accused’s valid waiver of an issue at trial if they determine the issue deserves new life. Chin, 75 M.J. at 223. I disagree.
The CCAs were established by the Judge Advocates General at the direction of Congress. Article 66(a), UCMJ. They are, therefore, Article I courts. Such courts are of limited jurisdiction, possessing only the powers specifically granted to them by the Constitution and statute. See United States v. Lopez de Victoria, 66 M.J. 67, 69 (C.A.A.F.2008); see also Clinton v. Goldsmith, 526 U.S. 529, 533-34, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999); In re United Mo. Bank of Kansas City, N.A., 901 F.2d 1449, 1451-52 (8th Cir.1990).
“Our duty in interpreting a statute is to implement the will of Congress, ‘so far as the meaning of the words fairly permit[].’” United States v. Spicer, 71 M.J. 470, 475 (C.A.A.F.2013) (alteration in original) (quoting Sec. & Exch. Comm’n v. Joiner, 320 U.S. 344, 351, 64 S.Ct. 120, 88 L.Ed. 88 (1943)). “Statutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.” Sturgeon v. Frost, — U.S. -, -, 136 S.Ct. 1061, 1070, 194 L.Ed.2d 108, 121 (2016) (internal quotation marks omitted) (citation omitted); see United Sav. Ass’n of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (“Statutory construction ... is a holistic endeavor.”).
The “should be approved” language does not grant the CCAs authority to disregard valid waivers and review the whole case as if a waiver never occurred, as the majority would have it. See S.Rep. No. 81-486, at 28 (1949), reprinted in 1950 U.S.C.C.A.N. 2222, 2254 (The CCA “shall affirm a finding of guilty of an offense or a lesser included offense (see art. 59) if it determines that the finding conforms to the weight of the evidence and there has been no error of law which materially prejudices the substantial rights of the accused”).
The majority also argues that an accused’s agreement to waive all waivable motions in effect waives appellate review altogether, *225 something an accused cannot do until after the convening authority acts on his case. See Chin, 75 M.J. at 223 (citing Article 61, UCMJ; Rule for Courts-Martial (R.C.M.) 705(c)(1)(B)). Article 61(a) does limit an accused’s ability to waive his right to appellate review to within ten days after the convening authority’s action is served on the accused or his counsel. But a waiver of all waivable motions is not a waiver of the right to appeal and is perfectly compatible with Article 61(a) and R.C.M. 705(c)(1)(B).
The purpose of Article 61(a) is to permit an accused who does not want to appeal his conviction or sentence to separate from the service promptly, without having to wait for appellate review of his case. H.R.Rep. No. 98-549, at 15 (1983), reprinted in - 1983 U.S.C.C.A.N. 2177, 2181. It does not prohibit an accused from waiving all waivable motions at trial; nor does it grant a CCA the authority to ignore an accused’s valid waiver.
R.C.M. 705(c)(1)(B) is a corollary to Article 61(a). It prohibits a term or condition in a plea agreement that deprives an accused of “the complete and effective exercise of post-trial and appellate rights.” It does not prohibit an accused from waiving trial issues. In fact, R.C.M. 706(c) is intended
to ensure that certain fundamental rights of the accused cannot be bargained away while permitting the accused substantial latitude to enter into terms or conditions as long as the accused does so freely and voluntarily. Subsection (1)(B) lists certain matters which cannot be bargained away. This is because to give up these matters would leave no substantial means to ensure judicially that the accused’s plea was provident, that the accused entered the pretrial agreement voluntarily, and that the sentencing proceedings met acceptable standards.
Manual for Courts-Martial, United States, Analysis of the Rules for Courts-Martial app. 21 at A21-40 (2012 ed.) (emphasis added). R.C.M. 705(c)(1)(B) and Article 61(a) are congruent: an accused may not waive his post-trial rights in a plea agreement and may only waive his right to appeal after the convening authority acts on his case.
Appellee’s agreement to waive all waivable motions did not deprive him of the right to appeal. He did not bargain away those fundamental rights R.C.M. 705(c) was meant to protect, such as contesting the jurisdiction of the court-martial, the voluntariness and providence of his guilty pleas, his sentence, and the effectiveness of his counsel. That is all the law requires. '
The majority asserts that, despite the CCA’s power of reanimation, a “waive all waivable motions” provision or an unconditional guilty plea still has meaning and effect because it “preclude[s] an appellant from raising the issue before either the CCA or this Court .... [and] continues to serve as a factor for a CCA to weigh in determining whether to nonetheless disapprove a finding or sentence.” Chin, 75 M.J. at 223. Beyond matters of law and application, the majority’s interpretation of Article 66(c) is logically inconsistent on its own terms. It gives a CCA unfettered discretion to impose its vision of fairness on the parties but prohibits the appellant from suggesting what is fair or which waived issues the CCA should consider. The CCA would rule by judicial fíat, as in this case, without giving the parties notice and the opportunity to argue their positions. This is a novel conclusion that. smacks of judicial paternalism of the highest order.
The majority implies that the decision of the lower court in this case was more than equity because: (1) it gave a “detailed explanation” as to why it deviated from its past treatment of waiver to review the unreasonable multiplication of charges issue—“the charging scheme grossly exaggerates the appellant’s criminality”; and (2) “a “waive all waivable motions’ provision or unconditional guilty plea continues to serve as a factor for a CCA to weigh in determining whether- to nonetheless disapprove a finding or sentence.” Chin, 75 M.J. at 223. But the CCA’s explanation for deviating from past practice is nothing more than a repetition of the definition of unreasonable multiplication of charges, see United States v. Campbell, 71 M.J. 19, 24 (C.A.A.F.2012) (“unduly exaggerate an accused’s criminality”); the same definition that would apply if Appellee had raised *226 the issue at trial. The fact that the CCA may, but is not required to, consider that an accused waived the issue at trial is no standard at all. It is no more than the uncertain measure of the conscience of the particular judges presiding over the case—in other words, pure equity.
Plea agreements play a crucial role in the military justice system. They afford an accused the opportunity to negotiate for reduced charges, a reduced sentence, or both by pleading guilty and giving up some of his constitutional and statutory rights. The finality and enforceability of the waiver is one of the accused’s most important bargaining chips in negotiating a plea agreement. Without it, the government has less incentive to engage in such negotiations.
Today, the majority puts the government on notice: do not trust that a CCA will enforce an accused’s valid waiver of an issue at trial. The CCA may now consider such inchoate issues on its whim. I disagree and, therefore, dissent.