# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
POND, MORRIS, and JUETTEN
Appellate Military Judges

**UNITED STATES, Petitioner**
v.
**Lieutenant Colonel PAMELA L. JONES**
**Military Judge, Respondent**

**And**

**Sergeant First Class BRYAN D. STARR,**
**United States Army, Real Party in Interest**

ARMY MISC 20250182

2 July 2025

------------------------------------------------------------------------
MEMORANDUM OPINION AND ACTION ON PETITION FOR
EXTRAORDINARY RELIEF IN THE NATURE OF A WRIT OF
PROHIBITION
------------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

POND, Chief Judge:

The government petitioned this court for extraordinary relief in the nature of a writ of prohibition in the court-martial of Sergeant First Class Bryan D. Starr, real party in interest. In essence, the government requests this court vacate the military judge's ruling returning the case to the Special Court-Martial Convening Authority to allow him to reopen the preliminary hearing, contrary to the Office of Special Trial Counsel's decision to refer the case to general court-martial. Assuming we have jurisdiction under the All Writs Act, 28 U.S.C. § 1651, petitioner must show (1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances. *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (citing *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004)). As discussed below, because we find the government has failed to meet all three prongs, we deny the government's petition.

## BACKGROUND

Sergeant First Class (SFC) Bryan D. Starr, the real party in interest and accused in this case, was involved in an incident on or about 29 November 2020 in

Fort Mitchell, Alabama that led to the tragic death of his then girlfriend's five-year-old son, the alleged victim ███. SFC Starr pleaded guilty in a civilian court in Russell County, Alabama to manslaughter on 17 July 2023 and was sentenced on 13 September 2023 to a five-year reverse split sentence, which required him to serve three years of probation, picking up trash at the location where the ██ died.

The day after his civilian sentencing hearing, SFC Starr's regimental commander preferred charges against him for involuntary manslaughter, child endangerment, and negligent homicide in violation of Articles 119, 119b, and 134, 10 U.S.C. §§ 919, 919b, and 934, Uniform Code of Military Justice [UCMJ], for the same incident for which SFC Starr pleaded guilty and was sentenced by the Russell County court. Following an Article 32, UCMJ, preliminary hearing, SFC Starr's Brigade Commander recommended the case not be referred to trial. On 18 December 2023, the convening authority–Commanding General, Maneuver Center of Excellence (MCOE)–referred the charges to a general court-martial and SFC Starr was arraigned on 5 January 2024. However, given the "concerns regarding the alleged defective preferral, referral, and Article 32 [preliminary hearing]", the Convening Authority subsequently dismissed the charges without prejudice on 16 January 2024. The Office of Special Trial Counsel then exercised its authority over the case under Section 531(c) of the 2024 National Defense Authorization Act (NDAA), Pub. L. 118-31 and preferred charges anew on 22 January 2024. After a new preliminary hearing, SFC Starr's Brigade Commander again recommended against referral of the charges to trial. On 9 May 2024, OSTC referred the case to a general court-martial and SFC Starr was arraigned on 31 May 2024.

After arraignment, defense filed a motion to dismiss the charges for defects with the preliminary hearing. On 7 June 2024, the military judge granted the motion, in part, by continuing the proceedings until defects in the preliminary hearing were corrected.[1]

In accordance with the military judge's ruling, the Preliminary Hearing Officer (PHO) informed the parties by email, on 24 June 2024, he was re-opening the preliminary hearing. On 2 July 2024, and without actually holding a hearing at which the Accused could be present, the PHO issued an addendum to his initial report. Defense objected under Rules for Courts Martial (R.C.M.) 405(g) and

---

[1] During the preliminary hearing conducted on 21 February 2024, the defense submitted the OSTC's SOP for the PHO's consideration. The OSTC objected and requested the PHO consider an updated version of the SOP. The PHO granted the OSTC's request to substitute the updated version. The military judge found the government's failure to ultimately provide the updated version of the OSTC SOP, which the defense requested, the preliminary hearing officer determined was relevant, and the government stated it would provide but failed to, constituted a violation of a substantial right of Rule for Courts-martial 405(i)(3)(A).

405(k), which require the presence of the Accused during the hearing. After considering the defense's objections, the PHO determined the preliminary hearing was "properly re-opened." The PHO forwarded his report (but not the defense objections) to SFC Starr's new brigade commander, COL ██ who like his predecessor, recommended against referral of the charges to trial.[2] On 12 July 2024, after considering the PHO's report and chain of command recommendations, the Special Trial Counsel Referral Authority reaffirmed her previous decision to refer the case to a general court-martial.

The defense then filed a motion with the military judge to continue the proceedings until the government remedied the defects in the preliminary hearing. On 4 October 2024, the military judge granted the motion continuing trial yet again after determining that it was error (1) for the PHO to "reopen" the hearing via email without providing notice for the accused to be present and make objections either in person or through remote means and (2) for the PHO not to forward defense objections to the convening authority, COL██ The military judge again ordered the preliminary hearing be reopened to comply with R.C.M. 405.

The PHO reopened the preliminary hearing on 13 October 2024. On 28 October 2024, the PHO issued his report. The next day, and before expiration of the five days for defense to submit objections, OSTC referred the charges to trial on 29 October 2024. On 30 October 2024, the defense submitted timely objections to the PHO's report and requested the convening authority, COL ██, reopen the preliminary hearing to address the objections.[3]

On 1 November 2024, the defense filed a third motion to dismiss for defective Article 32 proceedings. The same day defense filed its motion, COL ██'s legal assistant forwarded a draft memorandum for his signature, concurring with the

---

[2] After receiving the PHO's report, COL ██ recommended the case not be referred to trial stating, "SFC Starr has already been convicted and sentenced" and "[a]ny future legal action that results in confinement or a loss of retirement benefits directly compromises SFC Starr's ability to support the Victim's mother (now SFC Starr's wife) and her remaining child. SFC Starr must live with the responsibility for the death of a child for the rest of his life. We should not pursue further legal action and compromise his ability to make financial restitution."

[3] The defense asserted three objections: (1) that the PHO lacked the appearance of impartiality; (2) that after the preliminary hearing concluded, the government disclosed for the first time, on 24 October 2024, audio of SFC Starr's civilian court sentencing hearing despite the defense requesting such evidence on 15 February 2024 and which was relevant for the PHO to consider in making a recommendation on disposition of the charges; and (3) that the Article 6(b) victim designee was unable to attend or be heard although he was notified of the proceeding.

PHO's findings and recommendations. But after reviewing the defense's objections, COL ▮ rewrote the memorandum, directing the preliminary hearing be reopened with an alternative PHO of the appropriate grade and rank outside of the MCOE Office of the Staff Judge Advocate (OSJA) or a non-judge advocate officer of sufficient rank with a legal advisor. On 2 November 2024, the Special Trial Counsel Referral Authority considered defense objections, found them to be without merit, and reaffirmed her previous decision to refer the case to a general court-martial. The referral authority also considered COL ▮'s decision to reopen the preliminary hearing but stated he "cannot direct the re-opening without my request" and therefore considered it as a recommendation.

On 8 November 2024, the parties litigated the motion during an Article 39(a) session. The defense called COL ▮ to testify who expressed he was "most concerned about justice."

> COL ▮ We cannot be seen to go rubberstamp any part of the process or not do the thing we say we're going to do. And that's very important. And if you kind of look at it objectively outside, did we follow the process that we say we're supposed to do, and did we consider the relevant facts or did we check the block to get it done? If the answer is we check the block to get something done more quickly just because we wanted it to be expedient, then that calls into question military justice overall and is not the right way to go . . .
>
> I would generally say expediting procedures are better just because the thing sits over somebody's head for a long time and I haven't seen it go well. However, if the accused wants to do that because there's a procedural problem where there's an error in the process, then they're entitled to it. Were it not for objections in general, I would say any way we could expedite the process while still actually doing the process is the way to go. However, if there's an objection, we should – we should hear them and account for them and take the appropriate action based on those objections. . . .
>
> And if there's some defect in the process, just correct that defect and move on to the next step in the process.

COL ▮ acknowledged that he did not have the authority to dismiss the charges, acknowledged he lacked authority to accept alternate disposition of the charges, and acknowledged he disagreed with OSTC's rationale to refer the case to court-martial. In response to the government's questioning of his authority under

R.C.M. 405, COL ▉ responded, "if the practical application of that rule means that I don't have the authority to open the Article 32 hearing, I was not aware of that."

On 12 December 2024, the military judge issued a ruling ordering the case be returned to COL ▉ for action as the preliminary hearing convening authority. On 15 December 2024, the government requested the military judge reconsider her ruling. On 13 February 2024, during a subsequent Article 39(a), the military judge allowed the parties to argue their positions. After which, the military judge denied the government's motion to reconsider in a written ruling, dated 24 February 2025, and directed the convening authority reopen the preliminary hearing and proceed with the actions articulated in his 1 November 2024 memorandum. The military judge specifically stated she did not agree or disagree with the convening authority's decision to reopen the preliminary hearing, which she deemed "would be improper," but rather considered whether he had the authority to do so and found "that he does." The military judge further directed that the preliminary hearing be conducted no later than 10 March 2025.

On 7 March 2025, counsel from the Office of Special Trial Counsel filed a petition for extraordinary relief in this case requesting this court vacate the military judge's ruling to return the case to the convening authority to reopen the preliminary hearing. The petition was filed solely by counsel from the Office of Special Trial Counsel and did not include a signatory from the Government Appellate Division. This court specified whether the Office of the Special Trial Counsel had the authority or standing to file on behalf of and represent the United States on appeal before this court, and sua sponte, considered the petition *En Banc*. On 9 April 2025, the court dismissed the petition for failing to comport with Article 70, UCMJ.[4] That same day, the United States, through appellate government counsel, refiled the petition requesting the same extraordinary relief: issuance of a writ vacating the military judge's ruling to allow COL ▉ to reopen the preliminary hearing.

---

[4] Article 70, UCMJ, provides in relevant part that "The Judge Advocate General shall detail in his office one or more commissioned officers as appellate Government counsel," and "Appellate Government counsel shall represent the United States before the Court of Criminal Appeals or the Court of Appeals for the Armed Forces when directed to do so by the Judge Advocate General." In response to the court's specified issue, the government argued that OSTC personnel had authority and standing to file a Petition for Extraordinary Relief on behalf of the United States, when said filing is in coordination with the Chief, GAD, and the Lead Special Trial Counsel. The government did not argue that the OSTC personnel who filed the petition had been detailed as appellate government counsel under Article 70, UCMJ.

## LAW AND DISCUSSION

The All Writs Act grants "all courts established by Act of Congress" the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). "The All Writs Act is not an independent grant of jurisdiction, nor does it expand a court's existing statutory jurisdiction." *United States v. Howell*, 75 M.J. 386, 390 (C.A.A.F. 2016) (citing *Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999)). Accordingly, to issue a writ under the Act, a service court of criminal appeals must make two determinations: (1) the writ is in aid of its jurisdiction and (2) issuance of the writ is necessary and appropriate. *United States v. Brown*, 81 M.J. 1, 3 (C.A.A.F. 2021) (citing *Denedo v. United States*, 66 M.J. 114, 119 (C.A.A.F. 2008)).

*A. In aid of the court's jurisdiction*

Whether a writ is in aid of our jurisdiction is contingent upon our statutory and subject-matter jurisdiction. *Brown*, 81 M.J. at 3-4. "To establish subject-matter jurisdiction, the harm alleged must have had 'the *potential* to directly affect the findings and the sentence." *Id.* at 4 (emphasis added). "[T]he doctrine of potential jurisdiction allows appellate courts to issue opinions in matters that may reach the actual jurisdiction of the court." *Howell*, 75 M.J. at 390 n. 4 (citation omitted); *see also Brown*, 81 M.J. 1 (finding potential jurisdiction attached at the inception of the court-martial and continued as long as a pathway for review by the CCA existed).

We are not convinced that this writ is in aid of our jurisdiction. That is, we have reservations whether directing the reopening of a preliminary hearing has the potential to directly affect the findings and the sentence because under the current rules, the referral authority is not bound by the recommendations of the preliminary hearing officer. Unlike issues of judicial bias, *see Brown*, 81 M.J. at 3, or the authority of a military judge to award Article 13 credit when there is no intent to punish, *see Howell*, 75 M.J. at 388, or the correctness of a trial judge's ruling of what he would consider in making a ruling under Military Rules of Evidence (MRE) 412 and 513, which would later affect the admissibility of evidence presented at trial, *see LRM v. Kastenberg*, 72 M.J. 364 (C.A.A.F. 2013), we are not persuaded that reopening a preliminary hearing in light of defense objections, would have similar bearing on the findings and the sentence. While this court has exercised jurisdiction in denying a petition for a writ of prohibition to prevent the miliary judge from ordering the forcible shaving of petitioner's beard, that ruling had a clear bearing on the findings and sentence–the lack of an accused's proper military appearance could inflame the panel. *Hasan v. United States*, ARMY MISC

20120876, 2012 CCA LEXIS 399, n. 3 (Army Ct. Crim. App. 2012), rev'd on other grounds.[5]

In contrast, the purpose of the preliminary hearing is to simply determine:

(1) Whether or not the specification alleges an offense

(2) Whether or not there is probable cause to believe that the accused committed the offense charged

(3) Whether or not the convening authority has court-martial jurisdiction over the accused and the offense

(4) A recommendation as to the disposition that should be made

10 U.S.C. §832(a)(2).

The referral authority is not bound by any of the PHO's findings or recommendations. For instance, if the PHO determined there was no probable cause for a charged offense or recommended a disposition other than trial by court-martial, the referral authority could still refer all charges to a general court-martial, despite the PHO's recommendations. Additionally, as the government pointedly argues in its brief, the OSTC has exclusive authority to withdraw, dismiss, or refer the charges, and such decision to refer is binding on any applicable convening authority. 10 U.S.C. §924a. So, in addition to not being bound by the PHO's findings and recommendations, the OSTC is similarly not bound by the chain of command recommendations. Thus, we are not convinced that directing the preliminary hearing be reopened would have the potential to affect the findings and the sentence.

The government argues allowing the special court-martial convening authority to interfere with OSTC's authority to refer a covered offense contravenes 10 U.S.C. §824a, establishing the Office of Special Trial Counsel, and has the potential to prevent a multitude of cases from proceeding to trial. Yet, the decision to reopen a preliminary hearing under R.C.M. 405 does not mean those charges will not later be

---

[5] Citing R.C.M. 804, this court observed anything less than a proper military appearance "must be presumed to be prejudicial" because "nothing is more inflammatory to an officer of the military than to see a member of his service 'out of uniform' or wearing a soiled or ill-fitting uniform." *Hasan v. United States*, 2012 CCA LEXIS 399, n. 3 (Army Ct. Crim. App. 2012) (quoting *United States v. Taylor*, 31 M.J. 905, 906 (A.F.C.M.R. 1990)) (internal quotations and citations omitted) (finding the military judge has an obligation to safeguard petitioner against the injection of prejudice in the court-martial, even if the petitioner consents).

referred to trial. The government poses the specter of a commander unnecessarily (and repeatedly) reopening a preliminary hearing to purposefully prevent a case from ever going to trial. But here, although COL ▮ recommended against referral of SFC Starr's charges to court-martial, he is not arbitrarily directing the preliminary hearing be reopened but is doing so in response to defense objections.

While this is the third time the government has been required to reopen the Article 32, it was required to do so not because the Special Court-Martial Convening Authority determined the proceedings should be reopened but because the military judge determined that the government failed to substantially comply with R.C.M. 405 on two previous occasions, despite OSTC's objection and determination to the contrary. So, it would appear that most of the delay caused in this case with the preliminary hearing is not due to the actions of COL ▮ but those of the government. Additionally, juxtaposed to the hypothetical convening authority arbitrarily and repeatedly reopening a preliminary hearing is an accused's right to a speedy trial. The command also has an interest in the expeditious administration of justice for the good order and discipline of his or her unit.

For all these reasons, under these circumstances, we are not persuaded that directing the reopening of the preliminary hearing has the potential to affect the findings and the sentence. But in considering this petition, we will assume that it does and assume we have jurisdiction. Even with those assumptions, however, petitioner has failed to show the issuance of the writ is necessary and appropriate, as discussed further below.

### B. Issuance of the writ must be necessary and appropriate

"A writ of prohibition, like mandamus, is a 'drastic instrument which should be invoked only in truly extraordinary situations.'" *Howell v. United States*, 75 M.J. 386, 390 (C.A.A.F. 2016) (quoting *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983)). Thus, to prevail on a request for a writ, the Government must show three things: "(1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and undisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (citing *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004)). Here, the government has failed to meet all three prongs.

### 1. No other adequate means to attain relief.

"First, 'the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires' . . . a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process." *Cheney*, 542 U.S. at 380-81 (quoting *Ex parte Fahey*, 332 U.S. 258, 260 (1947)). The OSTC, as the government, is limited to appeals under Article 62, UCMJ. But because the military

judge's order does not terminate the proceedings or exclude evidence that is substantial proof of a material fact, or otherwise meet one of the jurisdictional requirements for a government appeal under Article 62, UCMJ, the government has no recourse to appeal the trial judge's ruling to this court. Thus, the writ is not a substitute for the regular appeals process. On the other hand, both the Special Court-Martial Convening Authority and OSTC are agents of the United States Government. Thus, the Petitioner is asking this court to resolve a dispute internal to a single party to the court-martial proceedings. It seems that the Petitioner, at this juncture, could avail itself of adequate alternative means to obtain relief. For instance, Petitioner could appeal to superior authority or request to amend internal agency regulations and policies, or both, rather than request this court to resolve an internal dispute.

### 2. *Clear and Indisputable.*

However, assuming that there is no other adequate means to attain relief, we are not convinced that the right to issuance of the writ is clear and indisputable.

First, we agree with Petitioner's contention that the statutory language of 10 U.S.C. §824a confers upon the special trial counsel "the exclusive authority . . . to refer charges and specifications [for any covered offense] to trial by general court-martial" and that such referral decision "shall be binding on any applicable convening authority." But the dispute is not about who has the authority to refer the charges for a covered offense but who has the authority to reopen the preliminary hearing, the completion of which is a precursor to referral of the charges to a general court-martial under 10 U.S.C. §832.

Thus, the question is whether the OSTC has the exclusive authority to direct the reopening of the preliminary hearing for covered offenses or whether that authority is shared by the convening authority. And as we discuss below, it is not clear and indisputable under the statute or the Rules for Court-Martial that OSTC is the sole authority.

10 U.S.C. §824a established Special Trial Counsel and conferred upon them certain exclusive authorities for charges alleging a covered offense:

- The exclusive authority on behalf of the government, to withdraw or dismiss the charges and specifications or to make a motion to withdraw or dismiss the charges and specifications;

- The exclusive authority to refer the charges and specifications for trial by a special or general court-martial;

- The exclusive authority to enter into a plea agreement; and

- The exclusive authority to determine if an authorized rehearing is impracticable.

Absent from this list of exclusive authorities in 10 U.S.C. §824a is the authority to direct or reopen preliminary hearings.

Turning to 10 U.S.C. §832, which requires a preliminary hearing before referral to general court-martial, the statute provides that the hearing will be conducted by an impartial hearing officer that "if a special trial counsel is exercising authority over the charges and specifications under this section (article), the special trial counsel shall request a hearing officer and a hearing officer shall be provided by the convening authority," and in those cases, the hearing officer shall submit the report to the special trial counsel. The statute, however, is silent on the filing of objections to preliminary hearing reports as well as the authority to reopen a preliminary hearing upon receipt of those objections.

Subsection (c) of 10 U.S.C. §824a provides that the special trial counsel shall carry out the duties described in this chapter and any other duties prescribed by the Secretary concerned, by regulation. Army Regulation 27-10, paragraph 30-5 outlines the duties of Special Trial Counsel.[6] This list includes a number of duties related to the court-martial process including preferral, referral, and the preliminary hearing. Yet, this paragraph only discusses detailing of counsel and that if a preliminary hearing is required, the special trial counsel will request a hearing officer from the convening authority. The regulation is silent as to duties and responsibilities regarding objections to the preliminary hearing or reopening the preliminary hearing.

Turning to the rules for courts-martial, the President has prescribed rules governing the filing of objections and the reopening of the preliminary hearing in R.C.M. 405(m)(5), which provides:

> *Objections to the preliminary hearing officer's report.*
> Upon receipt of the report, the parties shall have five days to submit objections to the preliminary hearing officer. Any objection to the preliminary hearing report shall be made to the convening authority who directed the preliminary hearing, via the preliminary hearing officer. . . . The preliminary hearing officer will forward the objections to the convening authority as soon as practicable. The convening authority may direct that the

---

[6] AR 27-10, paragraph 30-1 states: "This chapter establishes policy for the OSTC and implements, in part, Sections 531 – 539C, of the NDAA for Fiscal Year 2022 and Sections 541 – 542 of the NDAA for Fiscal Year 2023."

preliminary hearing be reopened or take other action, as appropriate. For cases where a special trial counsel has exercised authority, the special trial counsel may request the convening authority reopen the preliminary hearing. Upon such request, the convening authority shall reopen the preliminary hearing. This paragraph does not prohibit a convening authority or special trial counsel from taking other action prior to the expiration of five days allotted for submitting objections.

Our reading of R.C.M. 405 aligns with the military judge's reading of the rule. That is, for covered offenses, the rule provides that both the OSTC and the convening authority have the authority to reopen the preliminary hearing upon receiving objections to the report. While the rule states that OSTC may request the convening authority to reopen the preliminary hearing, it does not state that OSTC has the exclusive authority or that the convening authority, in a covered offense case, does not have the authority to direct the reopening of the preliminary hearing upon receipt of objections. To come to this conclusion, we do so reading R.C.M. 405 as a whole and in light of the statutory provision discussed above.[7]

In contrast to subsection R.C.M. 405(m)(5), the subsection immediately preceding it, R.C.M. 405(m)(4) specifies that the preliminary hearing report, once complete, shall be delivered to the convening authority "or, for hearings requested by a special trial counsel, to the special trial counsel." That is, the rule makes a clear distinction of who receives the PHO's report–either the convening authority or OSTC–depending upon whether the hearing was requested by OSTC or not. This parallels the statutory language in 10 U.S.C. § 832. But the subsequent provision in R.C.M. 405(m)(5) does not make a similarly clear distinction about who receives the objections to the report. R.C.M. 405(m)(5) simply states that any objection to the report shall be made to the convening authority without specifying whether the hearing was requested by OSTC or not. Also of note is that Army Regulation 27-10 adds a requirement not found in either the statute or the R.C.M.s, to serve the PHO's

---

[7] The President amended R.C.M. 405 by Executive Order on 20 December 2024. Exec. Order No. 14130, 89 Fed. Reg. 105,343 (20 Dec. 2024). While there were amendments to R.C.M. 405(m)(2), prescribing the contents of the PHO's report, there were no amendments to R.C.M. 405(m)(5), which is the rule at issue here. But we note R.C.M. 405(m)(2) was amended to add the following: "The preliminary hearing report is an impartial analysis of the case that *meaningfully* informs the referral authority when making an initial disposition determination . . . ." *Id.* at 105,353 (emphasis added). Similar language was also added to R.C.M. 405(a). *Id.* at 105, 347 (adding at the end of the paragraph the following, "The preliminary hearing enables the impartial assessment of the case so that the preliminary hearing report can meaningfully inform a disposition determination.").

report on the convening authority as well as the special trial counsel when, as in this case, the hearing was at the request of the special trial counsel.[8] This would indicate, that at least for the Army, the intent was for the commander to be a part of the preliminary hearing process beyond just providing the hearing officer.

Setting that provision of AR 27-10 aside, a plain reading of R.C.M. 405, in conjunction with a reading of the statutory language in 10 U.S.C. §924a and 10 U.S.C. §832, does not clearly and indisputably provide that OSTC has the sole authority, to the exclusion of the convening authority, to determine whether a preliminary hearing shall be reopened or not under R.C.M. 405.

*3. Appropriate under the Circumstances*

Even if Petitioner were to satisfy the previous two prerequisites, this court "in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381 (citing *Kerr v. United States Dist. Court for Northern Dist. Of Cal.*, 426 U.S. 394, 403 (1976)). We are not convinced that it is.

The writ is asking this court to resolve a dispute internal to a single party to the proceedings, the government. We are not convinced it would be appropriate for the court to do so in these circumstances. As discussed in this court's analysis of the first prong, Petitioner could appeal to superior authority to resolve an internal disagreement over whom within the government exercises authority to reopen a preliminary hearing under Article 32, UCMJ–the commander, the OSTC, or both, and under what circumstances.

Thus, assuming we have jurisdiction, we conclude petitioner has failed to satisfy all three prongs to demonstrate issuance of the writ is necessary and appropriate.

---

[8] Paragraph 30-6 of Army Regulation 27-10, Legal Services: Military Justice (20 April 2024) provides:

> *Preliminary Hearing report.* After the conduct of a preliminary hearing where the hearing officer was provided at the request of special trial counsel, the hearing officer will submit a copy of the written report, including the items listed in UCMJ, Article 32(c), to both the special trial counsel and to the convening authority who detailed the preliminary hearing officer.

Petitioner's request for extraordinary relief in the form of a writ of prohibition is DENIED.

This court's order staying the trial proceedings is LIFTED.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

CF:    JALS-DA        JALS-CR4
        JALS-GA        JALS-TJ
        JALS-CCR      Petitioner
        Respondent